JULIUS A. HAYDEN, APPELLANT, VS. L. A. THRASHER, ET AL., APPELLEES.

1. While the general rule is that an injunction will be dissolved upon answers denying all the equities of the bill, yet where parties are charged with fraud, unless the answers are *full and satisfactory*, the injunction, if right in the first instance, ought to be retained until the hearing.

2. Mere denials of fraud, or of fraudulent intent, without a full explanation of the facts disclosed in the bill and in affidavits filed in support of the bill, leave the question of fraud unsettled.

Appeal from the Circuit Court for Orange county, to which the case was transferred from Marion county.

The bill of complaint is, omitting the address, as follows:

Julius A. Hayden, of Orange county, Florida, brings this his bill against Barton H. Thrasher, Barton H. Thrasher, as trustee for his wife, ʻL. A. Thrasher and her children, and William A. Dickenson, all of Alachua county, Florida, and Early W. Thrasher, in his individual capacity and as trustee for his wife and children, and George W. Means, as trustee for Mattie S. Means and her children, all of Marion county, Florida, and thereupon your orator complains and says: That on the first day of June, 1875, the defendant, Barton

H. Thrasher, came to your orator and requested him to indorse six promissory notes made by William L. Thrasher, (a brother of Barton H.) in all amounting to $14,500. Your orator agreed to do it if made secure against loss in the event that said notes were not paid at maturity, and said Barton H. Thrasher told your orator that said notes would first be indorsed by himself and his brother, Albert M. Thrasher, and that William L. Thrasher would convey to your orator unincumbered property worth $30,-000 as indemnity against loss. That by appointment with said Barton H. Thrasher your orator went to the office of said Thrasher on the second day of June, 1875, and there met Barton H., Albert M. and William L. Thrasher, who are brothers, and sons of the defendant, Early W. Thrasher, and there found prepared six notes signed by William L. Thrasher, payable to his own order, and indorsed by him and then by his brothers, B. H. and A. M. Thrasher, all dated June 2d, 1875, and payable at 6, 12 and 18 months after date, with interest from date, one for $2,000 and five for $2,500 each.

Your orator having all confidence in the assurances of said Barton H. Thrasher indorsed said notes and took from William L. Thrasher a conveyance of certain real and personal property as indemnity against such indorsement, said property being in Fulton and Morgan counties, in the State of Georgia, which the said Barton H. Thrasher assured your orator to be free from incumbrances of every kind, which statement of Barton H. Thrasher your orator then believed to be true, and by said statement and said assurance was induced to indorse said notes, believing that he would be protected in any event, he, the said Barton H. Thrasher, having also assured your orator that said notes would be promptly paid at maturity, and your orator then believing that said William L., Barton H. and Albert M.

Thrasher were solvent and responsible. That soon after the indorsement of said notes your orator left the office of said Barton H. Thrasher, leaving said notes with Barton H., William L. and Albert M. Thrasher, (who remained in said office) and never saw them again till after their maturity ; that at the time that he indorsed said notes and took said conveyance as indemnity as aforesaid there existed a judgment against the said Early W. Thrasher in the Superior Court of Morgan county, Georgia, for a very large sum of money, the precise amount, and the name of the plaintiff, not now being remembered by your orator, (but which your orator asks leave to insert in this bill when ascertained) and said Early W. Thrasher had (as allowed by the laws of Georgia) executed a stay bond to the plaintiff in said judgment staying the proceedings under said judgment for the time permitted by law ; and his said sons, William L. Thrasher, Barton H. Thrasher and Albert M. Thrasher, had signed said bond as securities thereto, which said bond and the said judgment had become and was from the date of said bond a lien upon all the property of the said securities, and was at the time that the aforesaid conveyance from William L. Thrasher to your orator was executed a lien upon the property so conveyed by said W. L. Thrasher to your orator.

Your orator charges that the statement so made as aforesaid to your orator by the said Barton H. Thrasher, viz : that said property was free from incumbrances was false ; that said Barton H. Thrasher knew at the time that said judgment against said Early W. Thrasher existed and that said stay bond had been given, and that said William L. Thrasher, whose property had been conveyed to your orator as indemnity against his said endorsement, was one of the sureties on said bond, yet the said Barton H. Thrasher concealed said facts from your orator, well know-

ing that your orator would not have indorsed said notes if he had known of the existence of said judgment and stay bond, (your orator then having no knowledge of the fact) and that said property was not free from incumbrances. And your orator believes, and so charges, that the said statements so made to your orator by the said Barton H. Thrasher, and the said procurement of your orator's indorsement upon said notes, was the result of a conspiracy and confederation between the said Early W., Barton H., Albert M. and William L. Thrasher to injure and defraud your orator in the premises, they well knowing that said William L. Thrasher, the maker of said notes, and Barton H. and Albert M. Thrasher, the prior indorsers thereof, were insolvent, and that neither of them was able to pay, and that they did not intend or expect to pay said notes when they should mature.

Your orator charges that at the time of said transaction the said Early W. Thrasher was insolvent and is still insolvent, and that he and his said sons, Barton H., William L. and Albert M. Thrasher, were then purposing to remove to the State of Florida from the State of Georgia, where they then resided, and that they had no credit and could not raise money on their own notes, and that their object in procuring your orator's indorsement was to raise money on his credit, which they knew to be good, for the purpose of carrying out their plans.

Your orator further charges, on information and belief, that after said notes were then indorsed the same were disposed of either by distributing the same among the said Early W., Barton H., Albert M. and William L. Thrasher, or by procuring a discount of the same and distributing the money among themselves. That part of it was used to pay some notes signed by B. H. & A. M. Thrasher, and by Barton H. Thrasher as an individual. That part was taken

by Early W. Thrasher and part by Barton H. Thrasher; and that said notes passed by transfer into the hands of the following parties who discounted the same, viz: One for $2,000 to F. L. Freyer, one for $2,500 to A. B. Merriam, one for $2,500 to J. B. Tanner, one for $2,500 to John Neal, and two for $2,500 each into the hands of R. H. Richards, Cashier of the Atlanta Savings Banks.

Your orator charges that Barton H. Thrasher bought from Samuel C. Means a half interest in one hundred and ten acres of land in Marion county and paid him therefor $5,000, and that he bought the remaining interest in said tract from George W. Means, trustee for his wife and children, and paid him therefor $5,000, as will appear by Exhibits A and B hereto attached, containing a full description of said land, and which are made a part of this bill; which said payments were made either in whole or in part with the said money, which said Barton H. Thrasher had received from the discount of said notes or the notes themselves, and that if any part of said payment was made with other funds the same was Barton H. Thrasher's own money and not money held by him in trust, and that said Thrasher was at the time of said purchase and payments insolvent, and that he had no money which he held in trust for his wife and children, and that he took the deeds to said property in his name as trustee for his wife and children for the purpose and with the fraudulent design of preventing the holders of said notes and your orator from subjecting said land to the payment of said notes.

Your orator further shows that on the day that said Barton H. Thrasher bought said half interest from George W. Means, trustee, said George W. Means, trustee, entered into a written contract with him by which he agreed if said Thrasher so demanded at the expiration of three years to pay back to said Thrasher as trustee the said sum of $5,000

with interest at 15 per cent. per annum thereon, and as security therefor mortgaged to said Thrasher a certain other tract of land fully described in said contract, a copy of which is attached as part of this bill and marked Exhibit C.

Your orator further charges that at the time that said Early W. Thrasher got part of said notes or of the proceeds thereof, neither of his said sons was indebted to him either individually or as trustee, but that he either got the same as a voluntary gift knowing that it had been fraudulently procured, or got it as his part of the result of the conspiracy above mentioned to defraud your orator, to which conspiracy he was a party.

Your orator charges that said Early W. Thrasher used said notes or the proceeds thereof as follows, viz: He bought fifty acres of land from George W. Means, trustee, to-wit: Beginning at the southeast corner of section 31, township 7, range 21, and running north 20 chains, thence west 25 chains, thence south 20 chains, thence east 25 chains to point of beginning, and paid therefor $800, besides a considerable sum that he used to improve the property, and took the title either in his own name or as trustee for his wife and children; your orator not having been able to see the deed thereto cannot speak with certainty as to how the deed was made, but asks leave to attach a copy as an exhibit when the same can be secured; that said Early W. Thrasher having had two of said notes in his possession, falsely pretended to lend the same, viz: Amounting to $4,500, or $5,000, to Barton H. Thrasher, and said Barton H. used the same in paying George W. Means for said half interest so purchased, which said sum of money so paid to said George W. Means is the money which said Means agreed to refund at the expiration of three years as hereinbefore stated; that said Barton H. Thrasher and his

father, the said Early W. Thrasher, still further intending to defraud your orator and to fix said property and the proceeds of said note in such manner as to keep your orator or the holders of said notes from subjecting the same to the payment of said notes falsely pretended that said two notes above described were only loans to said Barton H., as trustee, and he, the said Barton H., in furtherance of said design, executed and delivered to his said father, Early W. Thrasher, a mortgage upon about thirty acres of said land so bought by him from S. C. and G. W. Means, as a pretended security for the pretended loan of said notes by Early W. to said Barton H. Thrasher, trustee, which said mortgage embraced the orange grove and house which said Means agreed to purchase back as aforesaid, which said mortgage your orator charges to be without consideration and fraudulent and void.

Your orator shows that at the maturity of said notes the said William L. Thrasher, the maker thereof, refused to pay the same, and the said B. H. and A. M. Thrasher likewise refused to pay the same, and suits were brought by the holders thereof against your orator who was the only party who had property out of which the same could be collected. That three of said suits are still pending and undisposed of, viz: One in the Superior Court of Fulton county, Georgia, in favor of J. B. Tanner for $2,500, and interest; one in the Circuit Court of the United States for the Northern District of Georgia in favor of R. H. Richards, Cashier, for $5,000, and interest, (viz: on two notes for $2,500 each) and one in the Supreme Court of Georgia in favor of John Neal for $2,500, and interest, the same being a writ of error to the City Court of Atlanta, which court had rendered a judgment against your orator. That judgments have been rendered in the Circuit Court of the United States for the Northern District of Georgia, in two suits on said notes

against your orator, viz: One in favor of F. L. Freyer for $2,800, principal and interest, besides cost, and one in favor of A. B. Merriam for $3,510, for principal and interest, besides cost. That your orator employed able counsel and defended said suits as far as he was able to do according to law, and is still defending the suits now pending.

That *fi. fas.* issued on said judgments and were levied upon your orator's property in Atlanta, Ga., and your orator to save said property from sale was forced to pay on the 3d day of January, 1879, the amount of said two judgments, to wit: the sum of $6,510 78-100.

Your orator further shows that soon after the indorsement by him of said notes, a *fi. fa.* issued upon the aforementioned judgment from the Superior Court of Morgan county, Ga., against the said Early W. Thrasher, was levied upon the property which William L. Thrasher had conveyed to your orator as indemnity as aforesaid, and which said Barton H. Thrasher had assured your orator to be unincumbered.

That this was the first information that your orator had received of the existence of said judgment and stay bond, and that he at once inquired of said Barton H. Thrasher for an explanation thereof; that said Thrasher who was and is an attorney-at-law assured your orator again that the property was free from incumbrances, and that it was not subject to levy and sale under said *fi. fa.*, and your orator filed his claim thereto and employed able counsel to contest the same and carried said cause to the Supreme Court of Georgia, at great cost, to wit: about $500.00, and said Supreme Court held that the said property was subject, whereupon the said property was sold under and applied to the payment of said *fi. fa.*, and thus became lost to your orator who was then left without any security whatever against loss by his said indorsement, and

your orator has reason to apprehend and does apprehend that judgments will be rendered against him as indorser in each of said suits now pending against him, and that in addition to the sum already paid he will have to pay about $15,000 or other larger sum in satisfaction of the same. And your orator says that by reason of the insolvency of the said Barton H. Thrasher, William L. Thrasher, Albert M. Thrasher and Early W. Thrasher, he will be without security to save himself from total loss of said amount unless he can obtain the relief hereinafter prayed.

Your orator shows that F. L. Freyer, as a collateral proceeding in this suit against your orator on said note held by Freyer, filed his bill in the Circuit Court of Marion county, Florida, against Barton H. Thrasher, as trustee, and procured from said court an injunction against said Thrasher, Trustee, restraining him from selling or incumbering any part of the property so bought by him from S. C. and G. W. Means, as aforesaid; that after said judgment had been rendered against your orator as aforesaid, and after your orator's property had been levied upon and advertised for sale thereunder, which sale was to have been made on the 7th day of January, inst., (which fact was known to said Barton H. Thrasher, and he likewise knowing that said judgments would certainly be satisfied by that time either by sale of said property or by payment by your orator,) the said Barton H. Thrasher still further designing and intending to defraud your orator by preventing him from subjecting said property so bought from S. C. & G. W. Means to the payment of said debts, moved to dissolve said injunction and set said motion for a hearing before the Chancellor at Gainesville, Fla., on the second day of January, instant, well knowing that as soon as said Freyer's judgment against your orator was paid on the 7th of January the said injunction would cease and be vacated.

And said motion was heard on said 2d day of January, and said injunction was dissolved with the statement by the Chancellor to said Thrasher that he would allow complainant's solicitor twenty days within which to move to reinstate said injunction.

Your orator further shows that immediately after, viz: on the same day, or the following day, after said injunction was dissolved, the said Barton H. Thrasher still further designing to injure and defraud your orator, and hinder him in the collection of his claim, combined, colluded and confederated to that end with his said father, Early W. Thrasher, and with the defendant, William A. Dickenson, (they, the said Early W. Thrasher and William A. Dickenson, knowing that said bill, filed by said Freyer was still pending, and that twenty days had been allowed for a motion to reinstate said injunction,) and falsely and fraudulently pretended to sell to said Dickenson the said house and orange grove containing five acres, as part of the one hundred and ten acres bought from S. C. and G. W. Means, which five acres was to be taken back by G. W. Means, Trustee, as hereinbefore set forth, (the three years within which it was agreed that said Means was to redeem it not having expired, but lacking only eight days of expiring,) and made a conveyance of the same to said Dickenson, (a copy of which your orator asks leave to attach as an exhibit as soon as the same can be had). Your orator has not had access to said deed of conveyance, and does not know what consideration is stated therein, but your orator charges on information and belief that said conveyance was without any consideration whatever, and was fraudulent and made for the purpose of covering up said property from the creditors of Barton H. Thrasher, and particularly to prevent your orator from reaching the same.

Your orator further charges on information and belief

that said Barton H. Thrasher, Early W. Thrasher and William A. Dickenson, designing to defraud your orator by pretending that said conveyance to said Dickenson, by said Barton H. Thrasher, was a *bona fide* sale for value ; he, the said Early W. Thrasher cancelled or transferred to said Dickenson the pretended and fraudulent mortgage which he, the said Early W. Thrasher, held on said property pretending that said Dickenson had not and has not paid him anything therefor ; and the said Barton H. Thrasher and the said Wm. A. Dickenson still further confederating to defraud your orator, the said Barton H. Thrasher purchased from Cannon a lot in the town of Gainesville, in Alachua Co., for the sum of $786.50, or about that amount, and had the deed thereto made in the name of said William A. Dickenson, which deed your orator has not had access to, as the same has not been recorded and is in possession of said defendants or one of them, and said Thrasher is now having built thereon a fine and expensive residence, said lot being described as follows : The southwest corner of block four in range five, in the town of Gainesville, being on the corner of Pine and Church Streets, being 98¾ feet on Pine Street and fifty feet on Church Street. And your orator further charges that said Barton H. Thrasher and William A. Dickenson still further designing to defraud and hinder your orator, he, the said Barton H. Thrasher, transferred to said Dickenson the said contract and mortgage from said Means to said Thrasher, he, the said Dickenson, paying nothing therefor, and said transfer being fraudulent, and that said Means still owns the full amount thereof.

Your orator charges that said Barton H. Thrasher is now insolvent, and that he has not the means, either in his own right or as trustee, to purchase said lot and build said residence, and that if the said lot was paid for by said Dickenson, and if the building thereon is being paid for by said

Dickenson, it was and is being done for the purpose of changing the investment made by said Barton H. Thrasher of the funds procured by him upon your orator's said indorsements, so as to mislead your orator and hinder him from collecting the amounts so paid out by him as aforesaid, and to hinder the holder of the other notes upon which suits are now pending and your orator from collecting the amounts thereof.

Your orator further charges, on information and belief, that said Barton H. Thrasher turned over to said Dickenson the crop of orages raised on said land, and that the said Dickenson is paying in part for said building with the income derived from said orange crop raised on said land bought by Barton H. Thrasher with the money raised from your orator's indorsement as aforesaid.

And your orator charges that unless the said defendants be restrained as hereinafter prayed they will dispose of said property to innocent purchasers and will incumber the same in such manner as will defeat your orator's rights in the premises, and thus cause him to suffer irreparable damage.

All which actings and doings of the said defendants is contrary to equity and good conscience, and inasmuch as your orator is without remedy of law he prays as follows: 1st. That the State's writ of injunction be granted, to be directed to the said defendants, Barton H. Thrasher, in his individual capacity and as trustee for his wife and children, to Early W. Thrasher, in his individual capacity and as trustee for his wife and children, to George W. Means, as trustee for his wife and children, and to William A. Dickenson, restraining the said Barton H. Thrasher, as trustee or in his individual capacity, from selling, mortgaging or conveying or in anywise incumbering said one hundred and ten acres of land by him purchased from S. C. Means and

George W. Means, trustee, to wit: Part of section five of township twelve of range twenty-one, in Marion county, Florida, bounded as follows: Commencing at the northwest corner of said section, and running east along the section line 33 chains and 17 links, thence south 33 chains and 17 links, thence west 33 chains and 17 links to the western boundary line of said section, and thence north along said section line 33 chains and 17 links to point of beginning; and restraining the said Barton H. Thrasher, in his individual capacity or as trustee, and the said William A. Dickenson from selling, conveying, mortgaging or in anywise incumbering that certain lot in the city of Gainesville known as the property bought from said Cannon, and described as the southwest corner of block 4, range 5, being on the corner of Pine and Church Streets, being 98¾ feet on Pine and 50 feet on Church Street, and from selling, conveying, mortgaging or incumbering the same or the said house, orange grove and five acres of land in Marion county, part of the said one hundred and ten acres bought by said Thrasher from S. C. and G. W. Means, which house, grove and five acres of land the said Barton H. Thrasher conveyed to said Dickenson, and from transferring, assigning or collecting said mortgage contract made by Geo. W. Means, trustee, to Barton H. Thrasher, trustee, and by said Thrasher transferred to said Dickenson, as well as said mortgage from B. H. Thrasher, trustee, to Early W. Thrasher, and restraining said George W. Means, trustee, from paying to said Thrasher, Dickenson, or their agents or assigns, the said sum of five thousand dollars and interest as set forth in said mortgage, and restraining the said Early W. Thrasher, as trustee or in his individual capacity, from selling, transferring, conveying, mortgaging or otherwise incumbering the said fifty acres of land as bought by him from Geo. W. Means, trustee, as aforesaid, described as follows: Beginning

at the southeast corner of section 31, township 7, range 21, running north 20 chains, thence west 25 chains, thence south 20 chains, thence east 25 chains to point of beginning, and that the said one hundred and ten acres so bought by the said Barton H. Thrasher, as trustee, and the said fifty acres so bought by the said Early W. Thrasher in his own right or as trustee, and the said lot in the town of Gainesville so bought by the said Barton H. Thrasher from Cannon and conveyed to him or to said Dickenson, or so much thereof as may be necessary, be sold and the proceeds thereof be applied to the payment of the said several sums so paid out by your orator, as hereinbefore set forth, and the balance applied to the payment of said notes on which suits are now pending against your orator, and the said George W. Means may be required within such time as to your honor may seem meet to pay into the registry of this court the said sum of five thousand dollars, with interest, according to the terms of his said contract with Barton H. Thrasher, and upon so doing that he be decreed to have good title to said five acres of land so agreed by him with said Thrasher to be redeemed, said amount to be applied to the payment of the amount due to your orator and due on said notes now in suit as aforesaid, and that in default of such payment by said Means your orator be subrogated to all the rights of the said Barton H. Thrasher, trustee, and said William A. Dickenson under said contract and mortgage from said Means to said Thrasher, and that said mortgage be foreclosed and said mortgage property be sold and the proceeds applied to the payment of the amount due to your orator and on the said notes now sued on against your orator, and that a receiver be appointed to collect the rents, issues, crops and profits of said lands so bought as aforesaid by Early W. Thrasher, as trustee or in his own right, and by Barton H. Thrasher, as trustee, from

said S. C. and G. W. Means, including the orange crop upon the five acres conveyed by said Barton H. Thrasher to said Dickenson, and the proceeds applied as hereinbefore prayed.

Then follows the general prayer and prayer for process.

The other facts of the case are sufficiently stated in the opinion.

*S. D. McConnell* and *Hammond & Johnson* for Appellant.

*Ashby & Thrasher* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court.

This suit was commenced in Alachua county by appellant against B. H. Thrasher and others for the purpose of compelling them to protect him against certain notes which he had indorsed at their request. The case was here on appeal at the January term, 1882, and some of the principal allegations of the bill are stated in 18 Fla., 795. B. H. and E. W. Thrasher have died since the commencement of the suit.

The cause now comes up on appeal from a decree dissolving the injunction which had been granted against B. H. and E. W. Thrasher, Dickenson and Means, forbidding the transfer of property alleged to have been purchased with the proceeds of the notes. The injunction was dissolved upon the answers of B. H. Thrasher, Dickenson and Knox, administrator of E. W. Thrasher.

B. H. Thrasher denies, *seriatim*, nearly every allegation of the bill. He denies that Hayden indorsed the notes at his request, and that he ever had any conversation with him on the subject; denies that he represented that the real estate in Georgia conveyed to secure Hayden was unincumbered, or that the parties were solvent, or that the indorsement was pro-

cured for the purpose of raising funds for the purpose of going to Florida, or for the purpose of division among his father and brothers, and generally denies all fraud in the matter. He says that he borrowed two of the notes for $4,500 or $5,000, indorsed by Hayden from his father, E. W. Thrasher, and used them in paying G. W. Means for an undivided half of 110 acres of land, to wit: $5,000, taking title to the land in the name of himself as trustee for his wife, and that he bought from S. C. Means the other undivided half of the land for $5,000, paying therefor $4,000 out of proceeds of property held by him in trust for his wife and $1,000 out of the proceeds of a portion of the property purchased which he sold. What property he had held as trustee for his wife, or how he obtained it, is not stated. He says that his father received from Albert M. Thrasher two of the notes " in settlement of their business affairs."   As to the lot on which his house was built he says that " as trustee he did have in possession and under his control ample means to purchase the Cannon lot referred to in complainant's bill and to build a residence thereon, and defendant alleges that said Cannon lot and the residence thereon were purchased and built *with the funds he held as trustee.*"

Right here we compare with this the statement of W. A. Dickenson, in his answer. He says: " In or about September, 1878, B. H. Thrasher, as trustee, procured this defendant to purchase the Cannon lot for him and in a short time thereafter, to wit: in November, 1878, engaged this defendant to advance money to build the house that is now being built upon the lot; the said B. H. Thrasher securing this defendant for the purchase of the lot and the furnishing the money for the building of the house, and all this was a finished bargain and contract long before the purchase of the Means land was mentioned," and the deed was taken in Dickenson's name " until he was made safe

for the money to be advanced, and this defendant was made perfectly safe long before the five acre trade was mentioned or thought of." This inconsistency is not explained. Thrasher also answers that he, as trustee, borrowed the two notes from his father, as trustee, to pay to Means for the land, and gave to his father as trustee a mortgage on the same to secure the loan amounting to " $4,500 or $5,-000."

Dickenson says in his answer that he bought of B. H. Thrasher five acres of the 110 acres procured from Means, being the same five acres on which Means had a residence, and an orange grove, to wit: on the third day of January, 1879, and at the same time a mortgage held by Thrasher, trustee, against Means, was transferred to Dickenson, and that the consideration was $6,500. This transaction occurred on the very next day after the dissolution of an injunction obtained by one Freyer against B. H. Thrasher in a suit brought by Freyer to secure one of the notes indorsed by Hayden, out of the same property. Dickenson says he knew nothing of that suit or injunction, but the fact remains that Thrasher knew of it and hastened to transfer the property to Dickenson the moment Freyer's injunction was dissolved. Though Dickenson says the purchase by him of the five acres was made " in good faith and for a valuable consideration," he omits to state that he *paid* the consideration or any part of it then or at any other time.

Dickenson also says the mortgage held by E. W. Thrasher, trustee, against B. H. Thrasher, trustee, covering this property, to secure E. W. Thrasher, trustee, for the two notes of " $4,500 or $5,000" borrowed of him by B. H. Thrasher, trustee, was transferred to him, Dickenson, by E. W. Thrasher " for a valuable consideration, and in the regular course of trade "; but Dickenson again omits to say what

the consideration was, or that he *paid* any consideration for this mortgage then or at any other time.

In a proceeding against Wm. M. Knox, as for a contempt of the injunction herein granted, Knox, who is now a party to this suit, as administrator of E. W. Thrasher, deceased, states on oath that " he made a contract with Dickenson for the purchase of the five acres referred to in said petition, and although he paid the entire purchase price he only took from W. A. Dickenson a bond for title," and he " submits that in making said purchase he could in no manner be charged with any contempt of court, he was not a party *in person* to the bill of complaint and had no desire or intention of placing the property beyond the reach of the complainant, Hayden, should he finally succeed in his suit." How much Knox agreed to pay or how much he paid to Dickenson or to any other person for this orange grove and residence he does not state, and Dickenson omits to state anything about this sale of the property to Knox, who is a brother-in-law to B. H. Thrasher. From this statement, if it is true, it would have been appropriate, perhaps, to have inquired of Dickenson why he sold and gave possession of the property to Knox while he himself was aware of the injunction, it having been served on him very soon after the filing of this bill, expressly forbidding him to do so.

As to the denial of B. H. Thrasher that he obtained the indorsement of Hayden upon the six promissory notes, one for $2,000 and five for $2,500 each, amounting to $14,500, and that these notes were distributed among his father, brothers and himself, he admits that he was present when the notes were indorsed, at Atlanta, Ga., in his office. That then and there his brother, A. M. Thrasher, and himself indorsed them and then complainant indorsed and left the notes with A. M. Thrasher. And he denies that the

notes were so procured to be indorsed with the view of going to Florida and there using the proceeds obtained upon the credit of the complainant's said indorsement. He denies that he had any conversation with complainant at any time on the subject of the indorsement of the notes and that he was in any way concerned in the matter of the disposition or negotiation of the notes: Yet he says that at the time of the indorsement of the notes " he did honestly intend that said notes should be paid at maturity and that the complainant should be held harmless in the premises." And he says further that he "borrowed" two of these notes from Early W. Thrasher, and that the latter had received them from his brother, A. M. Thrasher, " in settlement of their business affairs, and the transfer was made for a then valuable and present consideration," the actual consideration not stated. He used these two notes in paying Geo. W. Means for his undivided half of the 110 acres of land.

Means, in his answer, says the most of the $5,000 consideration for this land was realized out of these two notes.

Upon the hearing of the motion to dissolve the injunction certain affidavits were used by complainant in support of the allegations of his bill, and these affidavits were admitted by the Chancellor.

The affidavit of S. D. McConnell states that he met B. H. Thrasher in Atlanta, who had just returned from Florida, before the maturity of the notes, and Thrasher asked deponent to aid him in getting certain notes discounted, which notes were indorsed by complainant, and exhibited some of the notes described in the bill, and deponent knew of Thrasher's getting two of the notes discounted and soon afterward returning to Florida. F. L. Freyer swears that in February, 1876, B. H. Thrasher gave him a note of $2,000, signed by W. L. Thrasher and indorsed by B. H. and A. M. Thrasher and J. A. Hayden, dated June 2, 1875,

due 18 months after date, in exchange for a note Freyer held against G. W. Means, which last mentioned note was used by B. H. Thrasher in paying for land he had bought of S. C. and Geo. W. Means; and deponent, after the $2,000 note became due, sued Hayden and recovered judgment thereon for $2,800, which Hayden paid. B. E. Anderson, B. H. Overby and E. Heyser swear that they had known Early W. Thrasher and Barton H. Thrasher where they had resided in Georgia, and that they were insolvent, and judgments obtained before their departure in 1875 and executions against them remain unsatisfied. E. Heyser, Clerk of the Superior Court of Morgan county, where Early W. Thrasher resided, certifies on oath that an examination of the records fails to show that the wife of E W. Thrasher had any separate estate. Geo. H. Wagnow swears that he knew E. W. and B. H. Thrasher in Georgia; that E. W. Thrasher was supposed to be insolvent, and that he and his family "mysteriously disappeared from their home in Georgia in the night time in the fall or winter of 1875."

Thomas Lamins swears that he has known E. W. and B. H. Thrasher for some years, and that to the best of his knowledge and belief the wife of B. H. Thrasher, when he married her, had very little, if any, property, that she was poor and was educated mainly by Early W. Thrasher.

It appears that the Thrashers left Georgia and came to Florida soon after the making and indorsing of the notes in question. They bought valuable property which they paid for with money and with the notes, taking titles in themselves as "trustees for their wives and children," and taking and executing mortgages between themselves as such "trustees." The notes seem to have been distributed between them and "borrowed" by one of the indorsers for the purpose of buying property with them. Dickenson appears to be the instrument of B. H. Thrasher in holding, buying

and selling the property and securities acquired by B. H. Thrasher, trustee. Knox, the brother-in-law, (now the administrator of the estate of E. W. Thrasher) not being personally a party to the suit, steps in and buys some of the property held by Dickenson, and Dickenson, disregarding the injunction, sells the property to Knox "in the regular course of business" or "trade" and is paid a "valuable consideration," but in all this apparent shuffling and dealing they are all careful to avoid stating frankly what was the consideration, and how and when it was paid.

The whole tenor of the answers of B. H. Thrasher, Dickenson and Knox go very far toward establishing the truth of the allegations of the bill, that the indorsements of Hayden were procured by the Thrashers for the purpose of raising money for their own use with no intention of protecting him on the part of the Thrashers, and that Dickenson is aiding them in obstructing complainant's efforts to follow the property. Possibly his conduct can be explained but as the case stands it requires explanation which is not furnished by the answers.

The answer of B. H. Thrasher is a series of denials, and simply denials of allegations in the bill, and nothing is explained. He does not deny the charge of insolvency of himself, or his father, nor show that his wife had any property or estate of any kind, on coming to Florida, or that he held any as her trustee, which was not the very proceeds of these notes. Her poverty is *prima facie* shown by the affidavits of people who had known the family long before they came to Florida.

Upon this state of the case the Chancellor dissolved the injunction. We have not sought to show from the record as it now stands that the complainant is entitled to a decree against these parties or either of them, but to show that enough appears in behalf of the complainant and

against the principal defendants, from the bill and affidavits and from the answers of the defendants, to forbid the dissolution of the injunction.

The court, in Carter vs. Bennett, 6 Fla., 214, 236, remark that it is the general practice that if the answer denies fully *all the circumstances* upon which the *equity is founded*, credit is given to the answer and the injunction dissolved; but that it is not of course to dissolve the writ, and there are exceptions quite as important as the rule itself.

Chancellor Kent, in Roberts vs. Anderson, 2 John. Ch., 204, says: " The fraud as charged, is a proper and familiar head of equity jurisdiction, and unless the answer be full and satisfactory, the injunction, if right in the first instance, ought to be retained until the hearing.    *    *    *  All the denial contained in the answer is that the defendants were not privy to any fraud, and were *bona fide* purchasers under a judgment and execution.    *    *    *  This is leaving the question of fraud as unsettled as before the answer came in.    *    *    *  The case does not fall within the reason of the general rule that an injunction is to be dissolved when an answer comes in and denies all the equity of the bill.  The granting and continuing of the process must always rest in sound discretion, to be governed by the nature of the case."

Judicial discretion should be exercised in furtherance of justice.  A dissolution of the injunction in this case puts it within the power of the defendants to deprive the complainants of all remedy, though it should appear when testimony is taken that by the fraud of some of the parties he loses a very large amount of money and the answer was a sham.  It appears by the pleadings in this case that on the day after the dissolution of an injunction obtained by Freyer, in proceedings had for the purpose of securing

one of these notes, the orange grove property passed into the hands of Dickenson, who says he did not know when buying it of Thrasher that any litigation had existed respecting it. And it also appears by the answer of Knox, the administrator and son-in-law of E. W. Thrasher, (who in his life time had been served with the injunction,) that he had bought the same property from Dickenson and paid for it while Dickenson had been enjoined from doing the very act. And Knox also says he was innocent and ignorant of the existence of the injunction which Dickenson had violated. We submit that in view of the character of the bill in this case, and the admissions of the defendants, Dickenson and B. H. Thrasher, and the response of Knox in the matter of the contempt, the answers do not deny *all the equities* of the bill and that sound discretion requires that the injunction shall be continued until a final hearing.

Respondents urge that the complainant had been guilty of laches in the prosecution of the suit. Since the commencement of this suit two of the principal defendants have died ; the cause has been once dismissed and reinstated on appeal of this court; the Judge of the Circuit died, and his successor was disqualified to act; a change of venue became necessary and the cause was sent to another circuit, and on defendant's motion the injunction was dissolved, rendering another appeal necessary. Under the circumstances we do not think the question of laches should be suggested.

The decree dissolving the injunction must be reversed. As to the appointment of a receiver, the necessity of it must be left to the judgment of the Chancellor upon a further hearing.