JOHN H. McKINNE, ET AT., APPELLANTS, VS. E. T. C. DICKENSON, ET AL., APPELLEES.

1. Upon an appeal from an order granting an injunction, the action of the Chancellor will not be reversed, unless it is clear that he has committed an error or abused a sound judicial discretion in granting it.

2. Where the hearing of an application for an injunction is upon bill, answer and affidavits, in support of the bill, and the answer fails to explain as fully as it should one point material in the case, and the action of the Chancellor in granting the injunction is as to this point supported by the bill and the affidavits, though contraverted by the answer to the extent that the latter goes, it

cannot be said that the Chancellor has abused his discretion or committed any error justifying the interposition of the appellate court.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion.

*John W. Malone* for Appellants.

*Liddon & Carter* for Appellees.

Mr. Justice Raney delivered the opinion of the court:

The bill of complaint in this case, filed June 19th, 1886, by Dickenson and Taylor, appellees, alleges that on October 9th, 1883, E. K. Holliday, then living, was indebted to Dickenson and to Taylor, respectively, describing such debts.

That on such day, said Holliday was, as complainants are informed and believe, insolvent and indebted to a greater amount than the entire value of his visible property, and that he and McKinne, one of the appellants, fraudulently colluded, contrived and planned together to defraud, embarrass, hinder and delay complainants, the appellees, and other of Holliday's creditors, in the collection of the sum due them—and in pursuance of such plan Holliday executed a bill of sale to McKinne of one yoke of oxen, naming them, and one lot (about eighteen head) of hogs, (giving their marks,) two wagons and about 500 bushels of corn on the McKinne plantation, a copy of the bill of sale being annexed to the bill as a part thereof, and the consideration named in it being $400, and its date being said day of October. That this bill of sale was not made upon any good or valid consideration, nor intended to pass the title of the property to McKinne, but was ex-

ecuted through the collusion, covin, deceit and fraud, and with the intent to embarrass, hinder and delay complainants and other creditors of Holliday, as aforesaid.

That Holliday remained in possession of the property, claiming the same as his own, and exercising acts of ownership and control over it, and using and disposing of it as his own up to the date of his death, December 3d, 1883, and died in full possession and enjoyment of the same, and that after his death it went into the possession of Thomas Holliday, as the administrator of said E. K. Holliday, (said Thomas, as such administrator, being the other appellee and defendant herein with McKinne,) and that no part of such property was ever in the possession of McKinne.

That Thomas Holliday was appointed such administrator by the County Judge of Jackson county on December 6th, 1883, and entered immediately on the discharge of his duties.

That on the 10th day of said month, McKinne instituted replevin to recover of said Thomas the said property, basing his right to recover solely on said bill. That said Thomas defended and urged as a matter of defense the alleged fraudulent purpose of said bill of sale, but it was held by the court that the administrator could not avail himself of such defence, and on June 10th, 1886, McKinne recovered judgment for the possession of the following property, included in such bill of sale, viz: 400 bushels of corn, 17 head of hogs, one yoke of oxen, two wagons (giving their respective values), and interest on $388, at 8 per cent., from December 19, 1883, and such judgment awarding the usual writ of possession. That McKinne is about to sue out process for the enforcement of this judgment.

That on June 7th, 1886, Dickenson recovered judgment

for $430.35, and Taylor recovered judgment for $419.77, on their respective claims, against said administrator, as such, and that executions issued and have been returned *nulla bona.*

That the property embraced in the bill of sale included nearly all the visible property of the intestate, and that all his property not so included was under a mortgage for much more than its value, to named parties, excepting his wearing apparel, household and kitchen furniture.

That if the property covered by the bill of sale is not held to be assets for the payment of intestate's debts, the complainants will lose their entire respective claims, as the other unencumbered assets of the estate are not of a value of $100, and are insufficient to pay even the expenses of administration.

That on May 10th, 1886, the administrator suggested the insolvency of the estate in the County Judge's office, and is now administering the same as such.

The prayer is that the bill of sale be declared fraudulent and void as to complainants and that the property be held as assets of the estate applicable to the payment of intestate's debts, and that McKinne be enjoined from suing out process on his judgment, or enforcing the same, and that the administrator be restrained from delivering to McKinne any of the property, or from paying him any money or other thing on account thereof, and for general relief.

The bill is sworn to by the complainants.

The hearing of the application for injunction was upon bill, affidavits of Theodore R. Holliday, and the complainant, Taylor, and the answers.

The affidavit of Theodore R. Holliday states that he is acquainted with the parties and familiar with the property

described in the bill of sale, to wit: "the yoke of black oxen named Joe and Rolley, the lot of hogs, the corn in the crib on the McKinne plantation, and the two wagons." That all of it was in the possession of the testator at his death, December 3d, 1883, and that he was using and disposing of the same as his own. That there was no change whatever in the possession, control, use and enjoyment of it after the 9th of October, 1883. The testator was deponent's brother, and the deponent was on familiar terms with him and McKinne, met them frequently and talked with them about their business affairs, but neither of them ever referred to any sale of the property.

The answer of the administrator, Thomas Holliday, which must be regarded as having been treated by the Chancellor simply as an affidavit on the hearing, states that his intestate remained in full possession of the property up to the time of his death, December 3d, 1883, and died in full possession of the same, and after his death all the property came into his own hands as administrator, he having been appointed administrator December 6, 1883, and entered immediately upon the discharge of his duties, and that he has suggested insolvency as alleged.

That no portion of the property covered by the bill of sale was ever in the hands of McKinne.

That the bill of sale included all the visible property of the intestate except as stated in the bill of complaint.

That after October 9th, 1883, the date of the bill of sale, his intestate remained in full possession, use and enjoyment of all the property covered by it, claiming and disposing of the same.

It denies the allegations of fraudulent collusion, plan, &c., to defraud, &c., and delay the complainants or any other creditors of the intestate, in the collection of their

JUNE TERM, 1888. 371

J. H. McKinne et al. v. E. T. C. Dickenson et al.—Opinion of Court.

debts; or that the bill of sale was executed and delivered in pursuance of such plan; or that it was made without valid consideration; or that it was not intended to pass the title to defendant of the property mentioned; or that the bill was executed through collusion, &c., of the intestate and defendant, or either of them, to the end and purpose of defrauding, &c., and delaying complainants or other creditors of the intestate in the collection of debts due them by him; or that the intestate remained in possession of the property, claiming the same as his own and exercising acts of ownership over the same and controlling, using and disposing of them as his own up to the date of his death, and in the full possession and enjoyment of the same; or that said property after the death of the intestate went into the hands of said Thomas Holliday, as administrator as aforesaid, and also "denies that no part of said property was in the possession of" McKinne. It also denies that the property embraced in the bill of sale included nearly all the visible property of the intestate, and that all his property not included in said bill of sale was under a mortgage to much more than its value, to Woolfolk, or Dekle & Daniel, except his wearing apparel, household and kitchen furniture.

It admits the action of replevin against Thomas Holliday and the recovery of judgment thereon, and that he, deponent, is proceeding to enforce the same. This action was, it charges, brought against Thomas Holliday individually, and not as the administrator of E. K. H., and states that said Thomas went upon the plantation of defendant in Jackson county before he had administered upon the estate of E. K. H., and wrongfully took possession of said property, and refused to surrender possession to defendant upon demand made therefor; and thereupon defendant began his action of replevin and had said property levied upon, and then the said Thomas re-replevined the same, giv-

ing bond with the said E. T. C. Dickenson as a surety on his bond; and afterwards, about January 1st, 1884, said Thomas sold said property at public sale for cash and applied the proceeds to his own use. That the whole of said property has been consumed or destroyed except one ox, named Joe, and one wagon, which are in the possession of the purchaser thereof of said sale.

McKinne also makes answer to the several interrogatories propounded to him by the bill.

As to the intestate's insolvency, he says he does not know whether he was insolvent at the time stated in the bill, but to the best of his knowledge, information and belief, he was not then insolvent and indebted in a greater amount than the entire value of his visible property.

That the intestate did execute and deliver the bill of sale for the purposes therein stated.

To the third interrogatory, whether such bill of sale was not fraudulent, and executed for the purpose of defrauding complainant and other creditors of Holliday, the maker thereof, as stated in the bill, he replies that it was not fraudulent nor executed for the purpose of defrauding the complainants and other creditors of said Holliday, as stated in the bill, but on the contrary it was made fairly and honestly for the purpose of giving defendant a title to the property mentioned in it, and to the 4th interrogatory, inquiring if the bill of sale was made on any valid consideration, and it so, what, he replies that it was made upon a valuable consideration, that Holliday was indebted to him for money advanced to him, cotton sold him, and other articles sold him, and his promissory note over due, and that upon a settlement had between them he was due defendant $400, and that this was the consideration for the property mentioned in the bill of sale. The fifth interrogatory asks whether Holliday,

the intestate, did not remain in possession of all the property up to the date of his death, and whether he did not die in full possession of the same, and whether the same did not go into the hands of the defendent, Thomas Holliday, as his administrator, and whether any portion of the property was ever in his, McKinne's possession. McKinne's answer is, that the intestate did not remain in possession of all the property included in said bill of sale up to the date of his death, and did not die in full possession of the same, and the said property did not go into the hands of said Thomas, as his administrator, but all of said property was in his, McKinne's possession, prior to the wrongful taking thereof by said Thomas.

To the inquiries whether Thomas was not appointed administrator on the *date stated*, (December 6, 1883,) and entered immediately on the discharge of his duties as such, and whether complainants obtained judgment and executions and return thereof as alleged, and whether the insolvency of the estate has been suggested by the administrator as alleged, he answers that he did not know, and to a question as to the bill of sale including all the visible property of Holliday, except as stated in the bill, he replies in the negative.

The case as presented upon the face of the bill is one entitling the complainants to the relief asked. This cannot be doubted. It alleges fraud in fact, as well as circumstances which, of themselves, are presumptive of fraud and sufficient to throw upon the defendant, McKinne, the burden of explaining the alleged retention of possession, under the rule laid down in Gibson vs. Love, 4 Fla., 217, and approved in McKinne vs. Holliday, 22 Fla., 153.

There is, however, no doubt but that the equity of the bill on every other point than that of the retention of possession is fully met by the answer. It shows the considera-

tion of the sale, and responds satisfactorily to any express charge of intentional fraud or covinous purpose in the sale or in the execution of the bill.

There is, however, an insufficiency in the answer upon the point of retention of possession. Though the answer denies literally, or as charged in the bill, that the property remained in the vendor's possession up to the day of his death, or that he used or controlled it, or disposed of any of it as his own, or that after his death it went into the hands of his administrator, and states affirmatively in answer to the interrogatories upon these points, that it did not so remain, and was not so used or controlled, nor any of it so disposed of, and did not go into the hands of the administrator after the death of the intestate, yet the answer does not state either that the property went into the possession of McKinne at the time of the delivery of the bill of sale and remained in his possession, or that at any time during the intestate's life there was a delivery of it to McKinne, accompanied and followed by possession in him, or in any person for him. In the first paragraph of the answer, we have an *admission* that there was a delivery of the property at the time of the execution of the bill of sale, and in the answer to the fifth interrogatory there is a statement that all of the property was in McKinne's possession prior to the wrongful taking by Thomas Holliday, after the intestate's death. There is no charge in the bill that there was any delivery of the property to McKinne on October 9th, 1883, or at any other time, and there is consequently nothing in the bill on this point to *admit*. Though it is true the bill does not say in terms that the property was "not delivered," yet the whole meaning and purport of it is to the effect that there was no change of possession from Holliday to McKinne, and

the result is that the *admission* by the latter of a *delivery* cannot be taken as an affirmative assertion by him, or as evidence that there was a change of possession, or a delivery on the day stated. The last paragraph of the answer to the fifth interrogatory must be taken as the reply to the last question in the interrogatory of the same number, or we are without answer to it. If not so taken, and there is a failure to answer the question as to whether any portion of the property was ever in McKinne's possession, the consequence of such omission would be fatal to him on this hearing. If taken as such answer, it goes no further than to inform us that McKinne was in possession prior to the wrongful taking by Thomas Holliday, (then or subsequently, the administrator,) which wrongful taking was after the death of the intestate, and it consequently does not inform us that he was in possession, or that there was any change of possession before the death of the intestate. If there was not before the death of the intestate a delivery of the property to McKinne, *accompanied and followed by possession in him,* or, in other words, if there was no such delivery, so accompanied and followed by possession in the life time of the intestate, or if, although there was a technical delivery, the property afterwards remained in the intestate's possession till his death, the presumptions which arise from such continuation of possession under the rule laid down in the cases referred to, will, in the absence of other defence to the bill, be fatal to McKinne, unless he can explain the same by showing, as required by such rule, that it was consistent with the deed or unavoidable, or temporary, or for the reasonable convenience of himself, the vendee.

As the answer does not give us certain information on this point of possession, we are not satisfied that the equity

of the bill has been sworn away. The denials, or the other statements of the answer, are not competent to this end. Hayden vs. Thrasher, 20 Fla., 715 ; Everly vs. Price, 3 Green, 553 ; 51 Ga., 128, *infra ;* 2 High on Injunctions, Sec. 1475. The bill and affidavits state positively that the property remained in the possession of the intestate, and that there was no change of possession under the sale during his lifetime. It is true that the answer traverses the allegations that it so remained in the possession of the intestate, but in treating of the possession of the vendee it does not contain evidence as to when it went into or was in his possession, except to say that it was there prior to the time of a wrongful taking of the same after the death of the vendor, and it does not show that it was in the vendee's possession before the vendor's death. There must have been a change of possession to support McKinne's case, and what that change was, and that it took place in the lifetime of the intestate, he should have made clear to us. His answer being uncertain on this point, it is, upon the well known rule governing in such cases, to be construed most strongly against him. It is a denial of retention of possession by the vendor, without a sufficient showing as to possession by the vendee, though interrogated as to such possession.

If it showed affirmatively that the property went into possession of McKinne on or soon after the delivery of the bill of sale and afterwards remained there till the vendor's death, or if it admitted and explained a retention of possession by the intestate in accordance with the spirit of the rule in Gibson vs. Love, or even a resumption of possession by the intestate not inconsistent with such rule, we might hold that the entire equity of the bill had been met, but as it is we are unable to see that the Chancellor committed

any error or abused a sound discretion in granting the injunction.

If a reasonable doubt exists as to whether the equity of a bill is sufficiently negatived by the answer to warrant a dissolution it is not error for the court to refuse to dissolve the injunction and to order to stand over that proofs may be taken. 2 High on Inj., Sec. 1510; James vs. Lemly, 2 Iredell Eq., 278; Miller vs. Washburne, 3 Id., 261; Monroe vs. McIntyre, 6 Id., 65. The same rule is applicable on a motion for an injunction on bill and answer, where the case made by the bill is one clearly entitling the complainant to the writ. Moreno vs. Sullivan, 19 Fla., 200; Yonge & Bryan vs. McCormick, 6 Fla., 368.

That the defect in the answer arose from the haste so usual in preparation for meeting motions for injunction does not overcome the rule applicable in cases of an omission of the defendant to answer as fully as he should have. Yonge & Bryan vs. McCormick, 6 Fla., 368; Moody vs. Metcalf, 51 Ga., 128, 129.

Independent however of what has been said above, and treating the answer as fully meeting the case made by the bill, we are still unable to see that the action of the Chancellor in granting the injunction can, upon the principles controlling appellate courts in such cases, be held to be against the " weight of evidence " under the second section of the act of 1861, Sec. 20, p. 158, McC's. Dig.; Sullivan vs. Moreno, 19 Fla., 200.

Upon a motion for an injunction or for a dissolution of the same, the court does not commit itself on points or questions which may arise on the final hearing. Yonge & Bryan vs. McCormick, *supra;* Owen vs. Thaxton, 2 Tenn., 295; Chatwood vs. Brittain, 2 N. J. Eq., (2 Greene) 438.

Under the circumstances set out by the pleadings and affidavit referred to, and without noticing the defences of new matter alleged in the answer, which defences cannot be considered at this stage of the cause, Yonge & Bryan vs. McCormick, *supra*; 2 High on Injunctions, Secs. 1472 and 1481, our conclusion as to the action of the Chancellor is, that there is no error in it authorizing our interposition. His action should not be disturbed by us unless an abuse of a sound discretion is shown. 2 High on Injunctions, Sec. 1508.

The statement of McKinne's answer, that Holliday re-replevined the property and " gave bond with Dickenson as surety thereon for the forthcoming of the property," cannot be regarded as intended to set up the condition of the bond as an estoppel against Dickenson in this suit. It does not present to us what the condition of the bond is, so that we may judge of the legal effect of its terms upon the surety. It is in fact nothing more than a statement that a forthcoming bond was given ; but if we consider it as a pleading of the condition of the bond in estoppel it is merely an allegation of a conclusion of law.

The order appealed from is affirmed.