W. H. BRIGGS, APPELLANT, VS. HAROLD WESTON, APPELLEE.

1. The rule established in this State is, that when it is shown in the event of an absolute sale of personal property that the vendor has continued in the possession of the same, and the vendee has in no way assumed possession, the burden rests upon the latter to show that the former's possession is either consistent with the deed, is unavoidable, temporary, or for the reasonable convenience of the purchaser. In such case, without evidence explaining the possession of the vendor, a verdict sustaining the sale would be contrary to the evidence.

2. The continued possession and use of personal property by the vendor for his own use is inconsistent with a *bona fide* sale of the property, and requires satisfactory proof in explanation of such possession and use.

Appeal from the Circuit Court for Hamilton county.

The facts in the case are stated in the opinion of the court.

*Stewart* and *Roberson*, for Appellant.

No Appearance for Appellee.

MABRY, C. J.:

In November, 1891, appellant Briggs obtained a judgment in the Circuit Court for Hamilton county against H. T. & W. N. Armington for the sum of $309.98, and an execution emanating from the judgment was levied by the sheriff of said county on two mules and two horses. The property levied on is described as "one chestnut colored horse mule named Fox, and one black horse mule named Sam, one bay horse with white feet and face, and one dark bay pony horse." The appellee Weston filed affidavit that the mules and horses levied on under the execution belonged to him, and he also tendered a bond as required by the statute which was accepted. Upon the trial of the right to the property under the claim made, appellee obtained a verdict and judgment from which an appeal was taken in February, 1892.

Errors are assigned upon the rulings of the court admitting certain evidence on behalf of the claimant below, and it is insisted here by counsel for appellant that the court erred in admitting such evidence. We find no reversible error in the rulings of the court admitting the evidence to which the objection was made, and do not deem it necessary to go into a discussion of such matters.

The serious question in the case is whether the judgment ought to stand on the evidence as shown by the bill of exceptions, and this question is presented by

the ground in the motion for a new trial, that the verdict is contrary to the evidence. Appellee, as claimant, based his right to the property in question upon a purchase from H. T. Armington, one of the defendants in the execution in favor of appellant, and as evidence of this purchase a deed from Armington and wife to appellee of all the former's property, real and personal, situated in Hamilton county, is put in evidence. As part of the personal property described in the deed, thirteen mules and two horses are mentioned, and it is recited that the object of the deed was to convey to appellee all the real and personal property then owned by the grantors in the county, and the deed was executed and recorded about forty-five days before the execution was levied upon the property. It was shown by the claimant that the consideration for the property described in the deed was a mortgage indebtedness which he held against Armington, and that the property in question was embraced in the mortgage; but appellee is relying upon his purchase as shown by the deed, and not upon the mortgage. Under our statute a mortgage does not invest the mortgagee with title, and the object in putting in evidence the mortgage in this case was, we apprehend, to show the consideration in the deed. It is shown without dispute that after the sale Armington continued in possession of the mules and horses up to the time of the levy of the execution on them. The sheriff testified that Armington pointed out the property at the time of the levy as his property, but he denies this, and in our investigation we can not take as true the statement of the sheriff. His statement that he found the property in possession of Armington is not denied, and, in fact, it is clearly shown that he continued in possession of the property. Appellee testified that he lived in Massa-

chusetts, and that H. T. Armington was in his employ and had possession of the property for him. Armington, after testifying for appellee that the property in question was included in the mortgage and also in the deed that was afterwards made, stated, on cross-examination, that he had known appellee about six years, and had business dealings with him for several years, and his indebtedness to him was between four and five thousand dollars; that he had sold the property after suit was instituted against him by appellant, and that he had sold to appellee all his property at the same time. He further stated that he had remained in possession of the property for appellee after the sale, was still in possession of it, and was working for him. L. F. Roberson testified that he was attorney for appellant, and went to see Armington in order to get a settlement, and the latter stated that he was not in a condition to settle then, but if appellant would wait on him sixty or ninety days he would pay. After some conference between them as to what amount Armington owed, it was ascertained that he was indebted between four and five thousand dollars, and he stated that he had sold out the mill and fixtures to appellee, but if his creditors would give him the time he would settle with them in sixty or ninety days. Upon being asked how he could manage to pay his creditors in that length of time if he had sold out his business, said that he was still in possession of the mill and all the property, and would make the money out of it in that time. When testifying in rebuttal Armington did not deny making such statement, or that it was not true.

The foregoing is the substance of the evidence bearing on the question of the possession of the property after the sale. One of the head-notes in the case of Gibson vs. Love, 4 Fla. 217, states that where the sel-

ler of a slave retains possession after the sale, fraud is to be inferred, unless there is evidence not of a general character negativing a fraudulent intent, but of a character to explain possession. The presumption of fraud in a case where the vendor remains in possession, is so strong as to outweigh positive testimony of an entire absence of all fraudulent intent, or even to establish a fraud, where the jury are satisfied that there was none actually intended. The rule as stated in Halliday vs. McKinne, 22 Fla. 153, is that the retention of personal property by the vendor after a sale is *prima facie* evidence of fraud, and the evidence to rebut such presumption is an explanation of the retention by showing that it is consistent with the deed, or is unavoidable, or is temporary, or for the reasonable convenience of the vendee. As bearing on the point of possession, we also cite Peck vs. Land, 2 Ga. 1; S. C. 46 Am. Dec. 368; Ingalls vs. Herrick, 108 Mass. 351, S. C. 11 Am. Rep. 360. It is the rule, then, in this State that when it is shown in case of an absolute sale of personal property that the vendor has continued in possession of the property and the vendee has in no way assumed possession of the same, the burden rests upon the latter to show that the former's possession is consistent with the deed, is unavoidable, temporary, or for the reasonable convenience of the purchaser. In such a case without an explanation of the possession in the vendor, a verdict sustaining the sale would be contrary to the evidence. Wait on Fraudulent Conveyances and Creditors' Bills, sec. 255.

In the present case there is no foundation for a conclusion that the possession of the property in question (mules and horses) is consistent with a deed conveying them absolutely to the purchaser; nor is there any showing that the possession was unavoidable, or tem-

porary, or for the reasonable convenience of the ven-
dee. The proof does show that the vendee lives in
Massachusetts, but it is not made to appear that he
was not in this State when the deed was executed to
him here, and that there was an arrangement for his
convenience that the property should remain with the
seller a reasonable time until it could be transferred.
The testimony shows that appellee was present at the
trial, which was sometime after the levy of the execu-
tion, and even then the vendor, Armington, was still
in possession of the property. The extent to which
the testimony goes in explanation of the possession is
that the vendor retained possession for the vendee,
and this, under the circumstances of this case, and
considering the character of the property, is, in our
judgment, no sufficient explanation. Wait on Fraud-
ulent Conveyances and Creditors' Bills, sec. 259; Bump
on Fraudulent Conveyances, pp. 139, 140. There is
no proof that appellee ever took possession or assumed
control of the property, but at most it only appears
that the vendor continued in the possession for appel-
lee. Furthermore, the uncontradicted statement of
the vendor to Roberson was that the former was in
possession of the mill and all the property, and would
make enough out of it in sixty or ninety days to pay
his creditors. The continued possession and use of
property by the vendor for his benefit is not consistent
with a *bona fide* sale of the property, at least in the
absence of any further explanation of the possession
than we find in the evidence before us.

We are of the opinion that the court should have
set the verdict aside and granted a new trial on the
evidence submitted in explanation of the possession;
and it is, therefore, ordered that the judgment be re-
versed and a new trial awarded.