This case is here upon writ of error to review a judgment in a claim proceeding, wherein Sarasota County was claimant, James E. Weeks, trading and doing business under the name of Sarasota Marine and Engineering Company was plaintiff in execution, and Southern Construction Engineers, a corporation, was defendant in execution.
Without herein reviewing the testimony of all of the witnesses, the facts as disclosed by the record are stated briefly as follows: In the summer of 1925, Sarasota County was desirous of constructing hard surfaced roads in the county and needed suitable rock to build them. The fact that an embargo was on so that they could not get the rock elsewhere, and a desire upon the part of the county commissioners to obtain the rock in the county led them to accept a proposition made to them on August 10, 1925, by the Southern Construction Engineers, the owner of local rock, whereby the said corporation would "install a rock crushing plant, together with other machinery required for satisfactorily *Page 1066 
mining and crushing" the limestone, and would quarry, crush and deliver the rock at the quarry at a price not then exceeding the price of "Ocala Rock" delivered at Sarasota. The proposition which was in writing embraced the following paragraphs:
 "We will require an advance of not to exceed forty thousand dollars ($40,000.00) on account, should this proposition be accepted, for the purpose of acquiring the necessary crushing plant and equipment with which to satisfactorily and promptly deliver the rock required for your road building project.
 "Should you require it, we would be willing to have the title to the crushing plant and other equipment purchased by us with the funds we have just mentioned, stand in your name until we had fully delivered the rock to you liquidating said obligation."
It also contained a further provision that the corporation for the further protection of the county would be willing to place in the contract an abandonment clause in the event it should be unable to complete the contract, and thus enable the county to take over the quarry, plant and equipment and operate it. Pursuant to a resolution passed by the County Commissioners, a contract was prepared and signed which recited that the proposition of the Southern Construction Engineers had been "accepted by said Board of County Commissioners" and it was agreed that "Said Southern Construction Engineers to perform all the matters and things set out in said proposition of August 10th, aforesaid, on their part to be performed, and said Board of County Commissioners, to perform all the things provided to be performed by them in said proposition of August 10th, and to make the payments therein required in accord with said proposition." It was also agreed that should the Southern *Page 1067 
Construction Engineers be unable to complete the contract, the said Board had the right and privilege to take over the quarry, etc.
The Southern Construction Engineers ordered the machinery in question in its name. Said machinery was billed and shipped to it and drafts were drawn upon it for the purchase price thereof. When these drafts were presented for payment, some officer of the corporation would notify the county clerk's office, and the clerk by his deputy would draw warrants to take them up. While these warrants were not signed by any member of the Board of County Commissioners and no resolution was ever passed authorizing their payment, so far as the record shows, no question was ever raised as to their regularity. There is nothing to show that the county commissioners ever authorized the Southern Construction Engineers to purchase the machinery for the county or to show that the county was buying it. There are, however, general statements of the deputy clerk, the county engineer, and of two members of the Board of County Commissioners as it was constituted in the year 1925, to the effect that the machinery belonged to the county; that the county paid for it, and that the officers of the said corporation had stated that it belonged to the county. There is no proof that at the time the equipment was purchased or prior thereto the county indicated that it wanted the title to the crushing plant and equipment purchased as aforesaid to stand in its name until Southern Construction Engineers had liquidated its obligation by delivery of rock.
The plant closed down after it had been in operation about five months. The county did not exercise its privilege of taking it over, but on November 20th, 1926, a bill of sale was executed and delivered by the Southern Construction Engineers, whereby the said machinery was conveyed to Sarasota County and this instrument contained the following provision: *Page 1068 
 "This instrument is executed by the party of the first part to the party of the second part for the reason that all the foregoing goods and chattels were paid for by the party of the second part, and this instrument is executed for the purpose of confirming the title to same in the party of the second part."
The property was at no time delivered over to the county, but remained in possession of the Southern Construction Engineers, up until the time of the levy of an execution in favor of Weeks in a cause wherein he had obtained a judgment against the Southern Construction Engineers and there is no proof in the record that explains the continued possession of the said corporation.
In claim proceedings under our statute (Section 4517-4521, Comp. Gen. Laws of Florida, 1927) no formal issue is required. The jury is sworn to try the "right of property," and the burden is upon him who asserts the claim to prove it by competent testimony. He must recover upon the strength of his own title and right to possession of the property. Price v. Sanchez, 8 Fla. 136; Jones v. Fox, 23 Fla. 454, 2 So. R. 700; Stansel v. Rountree, 40 Fla. 428, 25 So. R. 277; H. B. Claflin Co. v. Harrison, 44 Fla. 218, 31 So. R. 818; Cohen v. Harris,61 Fla. 137, 54 So. R. 905.
Possession of personal property is prima facie evidence of title. Glass v. Continental Guaranty Corporation, 81 Fla. 687, 88 So. R. 876, 25 A. L. R. 312; 22 R. C. L. 79.
It is apparent that the property involved in this case was originally purchased by the Southern Construction Engineers and that the title vested in that corporation, even though the purchase price of same was furnished by Sarasota County, and unless execution and delivery of the bill of sale to the County is sufficient to sustain its title and right of possession as against the plaintiff in execution, its claim must fail. Conceding that the bill of sale evidences *Page 1069 
an absolute sale of the machinery, yet the proof shows that Southern Construction Engineers was in possession of it until the levy of the execution and there is no proof of a delivery by it of the machinery to the claimant prior to that time. That being true, under the decision of this Court, the sale is deemed prima facie fraudulent and void as against subsequent creditors and purchasers. (Gibson v. Love, 4 Fla. 217; Sanders v. Pepoon, 4 Fla. 465; Holliday v. McKinne, 22 Fla. 153; Volusia County Bank v. Bertola, 44 Fla. 734, 33 So. R. 448; 12 R. C. L. 551. Fraud therefore will be presumed, and this presumption is a presumption of law evidence to rebut which is not the proof of the general good faith of the vendor, but an explanation of the retention to show that it is consistent with the instrument of conveyance or is unavoidable. The presumption of fraud in such cases is so strong as to outweigh positive testimony of an entire absence of fraudulent intent, or even to establish a fraud, where the jury are satisfied that there was none actually intended. Gibson v. Love, supra; Briggs v. Weston, 36 Fla. 629, 633, 18 So. R. 852; McKinne v. Dickenson,24 Fla. 366, 371, 5 So. R. 34; Dixon Lbr. Co. v. Jennings,63 Fla. 405, 407, 57 So. R. 615.
The judgment of the lower court must be affirmed and it is so ordered.