INDIAN RIVER STEAMBOAT COMPANY, APPELLANT vs. EAST COAST TRANSPORTATION COMPANY, APPELLEE.

1. Pending a motion to dissolve an injunction on bill and answer, exceptions are filed to portions of the answer not in response to the bill; the filing of such exceptions is of itself no objection to the dissolution of the injunction where the portion of the answer not excepted to contains a sufficient denial of the equities of the bill.

2. A motion to dissolve an injunction on bill and answer involves the sufficiency of the equities of the bill to justify the writ in the first instance.

3. A court of chancery will not grant an injunction to restrain a tresspass merely because it is a tresspass; yet it will interfere by injunction where the injury is irreparable, or where full and adequate relief cannot be granted at law, or where it is necessary to prevent a multiplicity of suits, and especially where the tresspasser is alleged to be insolvent and nothing can be realized

388 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Syllabus.

on judgments that may be obtained against him at law. In such cases it will not do to simply allege that the complainant has no adequate remedy at law, and that his damages will be irreparable. The court will not act upon his opinion or his fears in such matters, but he must state facts in his bill to enable the court to to determine whether or not his alleged injury will be irrepareble.

4. On motion to dissolve an injunction on bill and answer where sufficient equities are stated in the bill, the court will look to such facts of the answer only as are responsive to the bill, and a respondent will not be permitted to rely upon new matter in avoidance in his answer not in response to the allegations upon which the equities of the bill are founded.

5. Under the practice of the court of chancery, since the adoption of the act of the Legislature, Chapter 1098, Laws of Florida, where the answer denies all the circumstances upon which the equities of the bill are founded, or where the bill and accompanying evidence are fully met by the answer and its accompanying evidence, the chancellor will ordinarily dissolve an injunction; but this is not an inflexible rule, and the granting or dissolving of injunctions is lodged in the sound discretion of the court, to be governed by the nature and circumstances of each case.

6. A railroad corporation under the laws of Florida has the right to erect and maintain docks, wharves and piers, as incidents to its business, and to hold or dispose of them as may be deemed proper, but such corporation engaged in the business of common carrier has no right to lease the terminal point of its railroad track and terminal facility on a navigable stream to a steamboat company, and thereby defeat the ingress and egress to and from said railroad track on the part of other competing lines of steamboat companies.

7. The Indian River Steamboat Company leased from the Jacksonville, Tampa & Key West Railway Company three hundred and

ninety feet of the east end of its dock on the Indian River at Titusville, on which dock was located the railroad track and terminal facility of said railroad company, and said railroad company covenated and agreed in said lease to maintain the railroad track on said dock and bulkhead and the trestle supporting said track, and to furnish proper and adequate facilities for transfer of local freight to and from said bulkhead : *Held*, on this state of facts the said steamboat company was not entitled to an injunction to restrain another steamboat company from landing at said railroad dock for the purpose of delivering and receiving freight to and fro from said railroad company.

8. The bill asked for an injunction to restrain respondents from using the dock at Titusville and the premises appurtenant thereto as their headquarters and offices, and from using and occupying numerous other docks of complainant at other points on Indian River, and also that complainant be decreed the undisturbed possession of the same. A preliminary injunction was granted as to the dock at Titusville only. Respondents, upon the filing of the bill, answered tendering an issue as to the docks other than at Titusville, and denied that they landed at the Titusville dock otherwise than for the purpose of delivering and receiving freight to and from said railroad company : *Held*, that while the decree of the court dissolving the temporary injunction on bill and answer was proper, it was error to dismiss the bill, as it cannot be said that no other relief was sought except to restrain respondents from landing their boats at the Titusville dock.

Appeal from the Circuit Court for Brevard county.

STATEMENT.

The Indian River Steamboat Company, appellant here, by attorneys presented to the Judge of the Fifth

Judicial Circuit, at chambers, on the 24th day of November, A. D. 1890, a bill for an injunction against R. P. Paddison, George M. Robbins and Walter S. Graham, associated and doing business as the East Coast Transportation Company, at Titusville, Brevard county, Florida. The case made in this bill is this : That the Indian River Steamboat Company is a corporation organized under the laws of Florida, with its usual place of business at Titusville, Brevard county, Florida, and its business is and has been since the 7th day April, A. D. 1886, the transportation of freight, passengers and mail matter upon Indian river; that in conducting said business it owns and uses seven steamboats, and during the winter season runs a daily line of steamers between Titusville and all points south and between Titusville and Melbourne on said river and during the other portion of the year a daily line between Titusville and Melbourne, and a tri-weekly line between Titusville and all points south on said river; that the nature and extent of its business render the erection and maintenance of docks and piers at Titusville and elsewhere on said river necessary, and the right to do so is one of its charter privileges; that on the 9th day of February, A. D. 1889, it leased from the Jacksonville, Tampa and Key West Railway Company so much of a certain dock and pier at Titusville as then and now lies on the easterly side of a line drawn twenty feet west of the most westerly building now and then constructed on said pier, to the easterly line of the bulkhead, with all the rights and privileges

thereunto appertaining, the same being about three hundred and ninety-six feet of the east end of the said dock, and that said dock and pier extend only to such depth of water in said river as affords a safe landing to such boats as said company possesses, and one suitable to its business, and that said dock and pier do not interfere with the use or construction of other docks which are or may be constructed and maintained on adjacent property along the extensive water front at Titusville; that said leased dock and buildings thereon have been constantly occupied and used by said Indian River Steamboat Company for the purpose aforesaid and for its offices, headquarters, and place of transacting most of its general business since the first day of March, A. D. 1889, and that said company has agreed to pay an annual rental for said dock and pier of five hundred dollars, payable quarterly, for the term of three years, and longer, unless a contrary agreement should be reached in the manner provided by the terms of said lease, and to keep said leased property in good repair, and perform certain other conditions enumerated therein at great expense; that said rental has been paid, and all the other conditions fully performed, and said lease is in full force; that large and expensive additions have been made to said dock and pier by said Indian River Steamboat Company, at a cost of three thousand dollars, and still said dock and pier and the accommodations thereon are inadequate fully to accommodate the increasing business of said company.

A copy of the lease bearing date February 9th, 1889, is attached to the bill as an exhibit.

It is further alleged in said bill that the sole object of said appellant company in entering into said lease was that it might control premises adequate to the transaction of its business, and since the first day of March A. D. 1889, it has so occupied and controlled said leased property, and no other person or company has occupied the same, except by the consent of the said Indian River Steamboat Company, and that said company has never held itself out as a general wharfinger, or permitted the public use of said leased property.

Further, that during the summer or fall of 1890, said Paddison, Robbins and Graham purchased or procured a steamboat, and are advertising to make regular trips upon said Indian River with one or more steamboats for the carriage of passengers and freight, and are seeking to make their headquarters and landing point at said leased dock or pier, and that they have been repeatedly informed by appellant company that said dock and pier were its private property, and that it could not and would not conduct the business of a wharfinger, or permit their boat to land thereat, but notwithstanding such notification they have persisted and still persist in landing, and do land their said boat at said dock through force of threats made by them that if they were deterred from landing or hindered in anyway in the transaction of their business at said dock they would cause to be arrested the agents or employes of said steamboat company, and that for each package

or shipment of freight or other matter refused to be received upon said dock they would sue said steamboat company for damages, and they threatened to continue daily to land at said dock and use the same freely for all purposes connected with their business without paying wharfage or other charges, and claim that said dock is public property, and they in common with all other persons are entitled to all the rights and privileges of said steamboat company in and about said leased property; that if the said Paddison, Rob bins and Graham are permitted to succeed in freely using and occupying said leased property the entire public will also insist on doing so, and said premi ses will become worthless as a franchise right and a place for transacting its said business.

It is further alleged that said steamboat company possesses the exclusive right to use and occupy said dock and pier for the purposes of its business, and that said respondents, Paddison, Robbins and Graham have no shadow of title or right to the use or occupation of said property, except through the courtesy of said steamboat company, and that this cannot be extended to them because said dock and pier are inadequate to accommodate the business of said company, and that there is neither dock frontage or storage room sufficient to accommodate even the boats of said company, and one or more of them must needs be moved to permit the landing of respondent's boats.

It is further alleged that there is another dock at Titusville not owned or possessed by said steamboat

company, at which said respondent's boats can and
frequently do land and transact business; that the win-
ter business of said steamboat company is larger than
its summer or fall business, and such winter business
has begun and is rapidly increasing, and said company
is soon to add other steamboats to its present service,
and thus render imperative the use of all its dock
room; that it is under contract to carry the United
States mail upon said Indian river according to stated
schedules and fixed time, and any violation thereof
would subject said company to heavy penalties, and it is
frequently necessary for said company to load and un-
load freight with the greatest dispatch and to em-
ploy thereon a great number of men in order to prevent
delays in the carriage of perishable articles, and at
the same time to comply with its said mail contract;
that the use of said dock and pier by said respondents
for any considerable time would cause inconvenience,
delays, possible loss of connections, and prevent said
company from properly conducting its business, and
would cause it irreparable damage; that said complain-
ant company believes that said respondents cannot be
deterred from using said dock and pier except by the
daily use of superior force, and that if such force be
used, or if packages of freight carried by or consigned
to said respondents be refused to be allowed a landing
on said dock said steamboat company would be sub-
jected to a multitude of vexatious suits, and that said

company has no adequate remedy at law to prevent such immediate and irreparable injury.

It is further alleged in said bill that said steamboat company is the exclusive owner or lessee, and is in exclusive possession of a large number of other docks at various points on said Indian river, which were erected and are maintained at great expense to said company for its exclusive use and benefit; that these docks are not public, nor do they interfere with the free navigation of the river, and said company does not hold itself out as doing the business of wharfinger at any of them, as said respondents well know; that said docks differ from the docks and pier at Titusville in this, that they are smaller and not well provided with storage room for the care and protection of freight, and are not intended to be used as the headquarters or places for conducting the business of said company, and do not afford facilities more than adequate to the needs of its business; that said respondents without any right or title whatever are making free use of such docks for all the purposes of their said business, and threaten to continue the same against the protests and express orders of said complainant company, and that they threaten to use said docks daily, or as often as their business may require by superior force, and to harrass and annoy said company by a multitude of suits should they in any manner be interfered with in the use of the same, or should wharfage be required of them.

396 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

It is further alleged that such interference with said docks as above stated, would cause such litigation, expense, trouble and delays as seriously to affect its business, prejudice its interests and cause such irreparable damage that courts of law could not compensate it for the same, and that said complainant company believes that said respondents are not pecuniarily responsible for any and all damages which said company may suffer by reason of their repeated and threatened interferences with said docks, and that judgments that might be recovered at law would be uncollectable against said respondents, and that said steamboat company is under contract to transfer and deliver immediately large shipments of freight and materials which peculiarly tax all its facilities to the utmost, and render any interference with them especially harmful, and its rights would be unduly prejudiced if an injunction be not issued immediately and without notice to defendants.

The prayer of the bill is that said respondents, their officers and agents be restrained by injunction from further using or occupying said dock and pier at Titusville, or the premises or appurtenances thereto belonging for the purpose of transacting thereat their business, except such business as they in common with all other citizens may properly transact with said company upon its private property, and from making said dock and pier the usual place for landing their boat, and for receiving and discharging freight and passengers thereat, and that said steamboat company be de-

JUNE TERM, 1891.          397

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

creed the undisturbed and undivided right of possession of said leased premises; and that said respondents, their officers and agents be enjoined from further using said other docks as their place for landing boats, and from receiving and discharing freight and passengers thereat, and for such other or further relief as the nature of the case may require.

The president of the steamboat company makes oath that he is acquainted with the facts stated in the bill, and they are true, except those alleged on information and belief, and as to those matters he believes they are true.

On this bill the judge at chambers granted a temporary injunction as to the dock and pier at Titusville upon the filing of a bond in the sum of five hundred dollars, to be approved by the Clerk of the Circuit Court of Brevard county. The bond was filed in the office of said clerk on the 25th day of November, A. D. 1890, and writ of injunction issued, restraining and enjoining said Paddison, Robbins and Graham, associated as the East Coast Transportation Company, from further using or occupying said dock and pier at Titusville for the purpose of receiving and discharging freight and passengers, and from making the same their usual place for landing their boats for said purpose, until the further order of the court.

On the 26th day of November, A. D. 1890, the respondents filed in said clerk's office their answer to the bill, and also mailed to the counsel for said steamboat company a notice that application would be made to

398 · SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

the judge of said circuit on the 2nd day of December, A. D. 1890, for a dissolution of said temporary injunction.

The material averments in the answer are as follows : That the East Coast Transportation Company was G. F. Paddison, George M. Robbins and Walter S. Graham, and not R. P. Paddison, as stated in the bill, and at the time of filing the answer, is a corporation existing under the laws of Florida, articles of association having been duly filed with the Clerk of the Circuit Court of Brevard county on November 22nd, A.D. 1890, and on same day forwarded to the Secretary of State at Tallahassee, Florida; but respondents waive any benefit or advantage of the failure to denominate them as a corporation in complainant's bill, and appear in their corporate capacity as to the East Coast Transportation Company.

Respondents admit that the Indian River Steamboat Company is a corporation under the laws of Florida, and that it is engaged in the business and employs the steamboats on the Indian river as alleged in its bill, and that the nature of its business renders the erection of docks and piers at Titusville and elsewhere on said river desirable, but respondents do not know, and pray proof to the extent of the charter rights of said steamboat company in the premises. Respondents admit the lease by the Jacksonville, Tampa & Key West Railway Company to the said steamboat company, the use of the dock and payment of rent as alleged, but

deny that said lease is now in full force and effect, or ever was valid or effectual in law.

Respondents admit that said steamboat company has made certain additions to the said wharf on the south side, but does not know whether or not said company is fully accommodated thereby, and asks proof of said allegation.

Respondents deny that the sole object of said steamboat company in entering into said lease with the Jacksonville, Tampa & Key West Railway Company was to control premises adequate to the transaction of its business, but aver that its said object therein was also to control the terminal facilites of said Jacksonville, Tampa & Key West Railway Company on the Indian river at Titusville, and thus to prevent the use of said railroad terminal facilities by any competing line of steamboats that might be put on said river, in order to preserve a monopoly of the transportation business of said river, and that said company has persistently denied the use of said railroad terminal facilities to respondents or to the general public since the lease aforesaid.

Respondents deny that said complainant corporation has never held itself out as a general wharfinger, or permitted the public the use of said leased property.

Respondents admit that they have purchased a steamboat and are advertising to make regular trips upon Indian river for the carriage of passengers and

freight, but deny that they are seeking to make their headquarters at said dock, and say that they are landing at said dock for the purpose of receiving and delivering freight to and from the Jacksonville, Tampa & Key West Railway Company under authority of a decree of the Railroad Commission of the State of Florida securing respondents in that right, a certified copy of which is attached to the answer.

Respondents admit that they were informed at one time by complainant corporation that it did not want to conduct the business of a wharfinger, but they aver that after the said decree of the Railroad Commission said corporation informed them that it would receive and receipt for all their freight at said dock on payment of a regular wharfage charge, and that respondents have continued to do business with said complainant corporation, as a general wharfinger for the past three weeks under said arrangement.

Respondents admit that they have intimated to the Jacksonville, Tampa & Key West Railway Company and its employes that if it violated the decree of the Railroad Commission by refusing to accord to respondents at the end of its dock and railroad at Titusville the same privileges and advantages as it accords to said steamboat company, notwithstanding its lease, that said neglect or refusal would be a violation of law of which respondents would complain to the proper authorities of the State, but respondents have never

threatened or otherwise intimidated the agents of said steamboat company, except they have threatened to complain of said railroad company if the use of its terminal was not accorded to them, and they do not care how the said railroad company and said steamboat company settle their differences in regard to the said dock, and have no concern except that said railroad company shall obey the said mandate of the Railroad Commission.

Respondents admit that they propose to land daily at said dock, or as often as it has business to transact there with the Jacksonville, Tampa & Key West Railway Company, and that said dock constitutes the charter terminal of said railroad company.

Respondents say they have paid wharfage to said steamboat company under protest for the use of said dock, but they only paid the same to prevent a breach of the peace and until they could obtain relief from the courts from such illegal exactions.

Respondents admit that they claim that said dock is public property, and that the public is entitled to a free landing at it without wharfage or other toll, because said wharf occupies and is a part of a public street of the town of Titusville, as will appear by the further allegations of the answer.

Respondents deny that said complainant corporation possesses the exclusive right to use and occupy said dock, or that respondents have no right to the use

26

thereof, and they deny that any of said complainant's boats have ever been moved to allow the landing of their boat, or that there will be any occasion therefor in the future.

Respondents admit that there is another dock at Titusville at which their boat frequently lands to transact other than railroad business, but respondents say that the water is frequently too low to admit of their boat approaching said wharf, and there is always great danger in so doing, and said dock is totally inadequate to the needs of respondents' business.

Respondents admit that said complainant's present wharf privileges may be inadequate as alleged, and they suggest that said complainant get quarters of its own, instead of appropriating a public street and a railroad terminal.

Respondents admit that they cannot be deterred from using said property except by the daily use of superior force, and that the use of such force or the neglect by the railway company to properly conduct respondents' business at said wharf would subject said railroad company and said steamboat company to a multitude of vexatious suits.

Respondents deny that said complainant company is the exclusive owner or lessee of a large number of docks at various points on Indian river, or has not held itself out as a wharfinger at some of the docks it pre-

tends to control, or·that respondents have ever landed at any dock of which said company was entitled to the exclusive use.

Respondents say that the allegations of said bill as to wharf privileges, other than those at Titusville, are vague and uncertain, and they claim the same benefit in their answer as if they had demurred thereto for uncertainty.

Respondents further deny that they contemplate any such trespass upon said docks as the ordinary courts of law could not adequately compensate in damages for, or that they intend to trespass upon the rights, privileges of property in anyway whatever of said company.

Respondents deny that they are not pecuniarily responsible for any and all damages they may occasion said complainant company unlawfully, and they say they do not believe that said complainant company is solvent.

Respondents deny that there was any occasion for the application to enjoin them without notice as alleged in said bill.

Respondents further answering say that in July, 1890, they complained to the Railroad Commission of the State of Florida, that the Jacksonville, Tampa & Key West Railway Company, a railroad corporation operating a railroad in the State of Florida, discriminated against respondents by attempting to lease the exclusive use of its dock and river terminal to com-

404 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

plainant company, by which said lease respondents operating a competing line of steambots had been discriminated against in the receipt and delivery of freight to said railway; that the said Commission by decision rendered on the 14th day of August, A. D. 1890, adjudged that the charter terminus of said railroad was the channel of Indian river, to which point said road had been constructed, and that the pier and dock at Titusville are a part and parcel of the main line of said railroad, and a necessary and indispensable facility which the law enjoins it to provide for the transportation of its business, and that said railroad company had attempted by said lease to the Indian River Steamboat Company to vest in it the exclusive use of said pier, and refused to grant the use of the same to the East Coast Transportation Company; further, it was considered and held by the said Railroad Commission that the said Jacksonville, Tampa & Key West Railway Company was guilty of a violation of section 4, Chapter 3862, laws of Florida, and that said company do desist at once from such discrimination, and that it extend to the East Coast Transportation Company the same uses, services, facilities and privileges at the end of said pier or wharf, in delivering and receiving freights from such company, as are extended by it to said Indian River Steamboat Company, a certified copy of said proceedings and decision of said Railroad Commission is. attached to the answer.

Respondents further aver that no proceedings have been had to set aside the said decision and order of

said commission, and it is operative as a law of the State, and gives respondents the right to land at said dock and wharf for the purpose of receiving and delivering freight to and from said railroad; that said decision cannot be attacked in a collateral way, nor will an injunction lie to restrain the execution of the mandate of said commission, but the same can only be set aside or restrained by a court in a direct proceeding against said commission, as prescribed by section 21, Chapter 3862, laws of Florida.

Respondents allege the decision of said Railroad Commission as a complete bar to the relief prayed in the complainant's bill, so far as it relates to the railroad wharf at Titusville, and they pray the same advantage thereof as if the same had been urged by way of plea to the bill of complaint.

Respondents further allege that the said lease by the Jacksonville, Tampa & Key West Railway Company to the said complainant company is not merely voidable, but the same is utterly void and worthless upon its face as repugnant to the common and statute laws of Florida, and a violation of the charter duties of said railroad in attempting to exclude the general public from the use of a portion of its road which is a public highway of the State, and a further violation of the law in that it attempts to give to said complainant corporation the exclusive use of said railroad terminal to the exclusion of all other competing lines of steamboats including that of respondents.

Respondents further allege that the threats charged

to have been made by respondents in said bill of complaint consisted solely in notification sent by them to the president of said steamboat company that he should comply with the above decision of the Railroad Commission and the laws of the State of Florida, or stand a trial for their violation; that said president is the active and responsible manager of the said Jacksonville, Tampa & Key West Railway Company, and it was in this latter capacity that it became his duty to obey the orders of said commission, and for the omission to do which, respondents threatened to prosecute.

Respondents further say that they have a legal right to land at said wharf to receive and deliver freight to and from said railroad company, and that any interference with said right by complainant company, either by wharf charge or other restrictions, is a trespass upon their right, and that said lease from said railroad company is void in so far as it conflicts with their right to use said wharf.

Further answering, and in reply to that portion of the bill alleging that respondents claim said dock and wharf to be public property and the public are entitled to the free use of same, they say that said wharf occupies and is a part of a public street of the town of Titusville, called Broad street; that a map of the town site of Titusville was placed on record by the proprietors thereof on the 9th day of February, A. D. 1878, when said town site was a part of Volusia county, and that upon this map Broad street was shown as at present located except that it was 106 feet instead of 100

JUNE TERM, 1891.    407

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

feet wide; that a lot was purchased on the south side of said Broad street, by said map, and devoted to business purposes, and after that part of Volusia county including Titusville was joined to Brevard county, and in the year 1881, the original proprietors of said town site had a map of said town placed on record in Brevard county showing the streets substantially as on the first map, certified copies of portions of said maps being attached to the answer of respondents.

Respondents further aver that upon the faith of the dedication of the streets shown on said maps, lots were bought, money invested and the town built up by the public, and that said dedication and use of Broad street vested the right thereto in the community beyond the subsequent control of said original proprietors.

That the object in locating the town of Titusville upon the river was to enjoy its facilities as a highway and Broad street being one of the only two avenues leading to the river by which it could be reached from the interior of the town without going over private property, the right to pass over said street to the river was dedicated by said maps, and the terminus of said street at the river was used by the public in accordance with the dedication by the original proprietors from 1876 until its use was interrupted by said complainant in this suit.

Further, that in 1885 the Atlantic Coast, St. Johns & Indian River Railway Company procured from Mrs. Titus, the original proprietor of the town site of Titus-

408 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

ville, a deed to all of Broad street, notwithstanding said street had been dedicated to and accepted by the public in 1876, and that the lots fronting thereon had been nearly all disposed by said original proprietor prior to her sale of said street; that no dedication of Broad street for general railway purposes was ever made, the only dedication of it being to the public to use as a street, as shown by said maps.

Respondents further allege that the Atlantic Coast, St. Johns & Indian River Railway Company commenced business in January, A. D. 1886, and soon thereafter leased its road to the Jacksonville, Tampa & Key West Railway Company, and that during the years 1886, 1887 and 1888, the use of Broad street and the right to pass over the end of it to Indian river was enjoyed equally by the railroad company and the public at large, although the street has been extended to the channel of the river by the railroad for the accommodation of its business, and the right of the public to a free landing at the end of said street according to its original dedication was not interrupted until the year 1889, when the said Jacksonville, Tampa & Key West Railway Company attempted to lease that part of the street where it had been extended to the channel of the river, to the complainant, the said Indian River Steamboat Company.

Respondents also allege that no proceedings have ever been taken to condemn any portion of Broad street for railroad purposes; that the deed from Mrs. Titus to said railroad company in 1885 is void as far as it at-

JUNE TERM, 1891. · 409

Indian R. Steamb't Co. v. East Coast Trans. Co.—Statement of Case.

tempts to interrupt the easement of the public in said street, and that said railway company and its attempted lessee, the said complainant in this suit, are trespassers upon said street, which is public property under the control of the town council of Titusville, and not in the Jacksonville, Tampa & Key West Railway Company, or in said complainant.

In conclusion respondents pray the same advantage of their answer as if they had pleaded or demurred to the bill of complaint.

Affidavits of W. B. Watson and S. M. Lorimer were filed in behalf of complainant company before the judge at chambers on January 2nd, A. D. 1891. These affidavits will be referred to in disposing of the questions to which they relate in the discussion of the case.

On the 3rd day of January, A. D. 1891, the said complainant company filed with the judge at chambers a motion to strike from the files the answer of respondents, because it purports to be the answer of a corporation and is not under its corporate seal; that if said answer be considered the answer of individual stockholders, it is improper, as to some or all of them it was filed without leave first obtained; and because the motion to dissolve is based upon the answer and must fail if there is no proper answer. Subsequent to the filing of this motion to strike, and without any action being had thereon by the court, complainant filed with

the judge at chambers certain exceptions to the answer
of respondents on the grounds of scandal and imperti-
nence.    The portions of the answer alleged to be scand-
alous and impertinent are pointed out.    No disposi-
tion seems to have been made of the exceptions, but on
the 7th of January, A. D. 1891, the judge made the
following decision on the motion to dissolve the in-
junction, viz:    "This cause coming on to be further
heard on motion to dissolve the injunction, after hear-
ing counsel for both parties, it is ordered, adjudged
and decreed that the temporary injunction heretofore
granted herein be dissolved, and further, that the bill
be dismissed without prejudice."

The Indian River Steamboat Company, complainant
below, appeals from the decree dissolving the injunc-
tion and dismissing the bill.

The other facts in the case are stated in the opinion
of the court.

*Hamblin & Stewart* for Appellant.

*Robbins & Graham* for Appellee.

Mabry, J.:

The question sought to be presented by the motion
to strike the answer of respondents from the files does
not properly arise.    The bill was filed against R. P.
Paddison, George M. Robbins and Walter S. Graham,

## JUNE TERM, 1891.                411

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

doing business as the East Coast Transportation Company. The answer alleges that G. F. Paddison, George M. Robbins and Walter S. Graham composed the East Coast Transportation Company, and that R. P. Paddison was only an employe of said company. It is further stated in the answer that said company was then incorporated under the laws of Florida, but respondents waive the misnomer as to R. P. Paddison, and the failure to denominate them as a corporation in the bill. While they say they appear in their corporate capacity as the East Coast Transportation Company, in fact it is the answer of respondents individually, as they are sued.

Without a hearing on the motion to strike, complainant filed numerous exceptions to the answer and said motion may be considered as abandoned.

The exceptions to the answer were filed after the motion to dissolve was made, and pending the consideration of said motion. It seems that an order *nisi* to dissolve an injunction under the English chancery practice obtained after exceptions to the answer have been filed, is irregular. Williams vs. Davis, 1 Simons & Stuart, 262; Howes vs. Howes, 1 Beavan, 197. In Gibson vs. Tilton, 1 Bland's Ch., 352, S. C. 17 Am. Dec., 306, it is said by the chancellor : "On the hearing of a motion to dissolve an injunction, objections of every kind to the answer may be made and are then in order. Because the motion itself, in its very nature, is founded upon the correctness and sufficiency of the answer in every particular. Hence, the plaintiff may,

412          SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

on the very day of hearing the motion, file exceptions
to the answer, and have them heard and decided upon.
The defendant can have no cause to complain of sur-
prise, because by his motion, he calls upon the plain-
tiff to show cause why, after having well and sufficiently
answered the bill, the injunction should not be dis-
solved. And having thus planted himself upon the
sufficiency of his answer at that time, and for that pur-
pose, he stands pledged to sustain it in all respects; or
he must fail in his motion." In Stitt vs. Hilton, 31 N.
J. (Eq.), 285, it was held that where the answer suffi-
ciently denied the grounds of equity upon which the
injunction was granted, it will be dissolved although
exceptions to other parts of the answer have been
filed. The court said : "The filing of exceptions to an
answer is, of itself, no objection to the dissolution of
an injunction. The court will consider the exceptions
only for the purpose of ascertaining whether they re-
late to those parts of the bill on which the injunction
was awarded." The exceptions to the answer in the
case now under consideration are pointed specially at
the portions setting up the decision of the Railroad
Commission and the location of the dock in question
in a public street of the town of Titusville. The con-
clusion we have reached in reference to the effect of
such portions of the answer on the issue before us, as
will fully appear in a subsequent portion of this opin-
ion, makes it unnecessary for us to consider the ques-
tion of exceptions at all, as they relate to matters
which have no bearing on questions settled here. We

JUNE TERM, 1891. 413

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

proceed to enquire, then, into the other matters presented for our consideration upon the appeal. In so far as the correctness of granting or dissolving the injunction is involved, it is clear that we have to deal only with the matters presented by the record in relation to the Titusville dock, as no injunction was granted as to any other.

The appellees, in contending here for an affirmance of the decree of the lower court, in dissolving the injunction, do not question, it seems, the sufficiency of the bill in point of equities to justify the issuance of the injunction on an *ex parte* showing. Upon information of the existence of the bill, and the issuance of the writ, they filed an answer, and upon that moved to dissolve. This they had a right to do, but their motion to dissolve involves the sufficient equities of the bill to justify the writ in the first instance. We will, therefore, enquire if the bill justified the issuance of the injunction. The last case decided by Chancellor Kent, Jerome vs. Ross, 7 Johns Ch., 315, has been recognized as occupying a foremost place on the subject of equitable jurisdiction in matters of trespass. In this case the remedy of injunction was invoked to restrain a defendant from digging and carrying away rock from plaintiff's premises, and was denied on appeal by the learned Chancellor. Nothing special was alleged as to the value of the rock, or the uses to which it could be applied. The principle announced here is,

that an injunction will not lie to enjoin a mere trespass, where the injury is not irremediable and destructive of the estate, and when the ordinary legal remedy in a court of law will afford adequate satisfaction.   In Shipley vs. Ritter, 7 Md., 408, it is said, that although an injunction will not be granted to restrain a trespasser merely because he is a trespasser, yet equity will interfere where the injury is irreparable, or where full and adequate relief cannot be granted at law, or where the tresspass goes to the destruction of the property as it has been held and enjoyed, or where it is necessary to prevent a multiplicity of suits.   Here an injunction was decided to be proper to restrain the destruction of timber so situated with reference to a dwelling house that it sheltered it from storms and shaded it from the sun and was ornamental to the grounds.   A very clear view of the chancery courts' powers in such cases is expressed in the case of Gause vs. Perkins, 3 Jones (Eq.), 177.   It is here said, much difficulty occurs in defining what injury is irreparable.   "The word means that which cannot be repaired, retrieved, put back again, atoned for."   An example is given in this case of the destruction of the noble oaks in the State-house grove.   "But the meaning of the word irreparable pointed at by this example, is not that which has been adopted by the courts either in England or in this State.   Grass that is cut down cannot be made to grow again, but the injury can be adequately atoned for in

JUNE TERM, 1891. 415

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

money. The result of the cases fixes this to be the
rule: The injury must be of a pecular nature, so
that compensation in money cannot atone for it; where,
from its nature, it may be thus atoned for, if in the
particular case the party be insolvent, and on that ac-
count unable to atone for it, it will be considered irrep-
arable." There is nothing in the nature of a dock
itself to make the landing of boats thereat a cause for
equitable interposition. An injunction for this pur-
pose was granted in the case of the New York Printing
and Dying Establishment vs. Fitch, 1 Paige, 97. On
appeal Chancellor Walworth dissolved it. He says, in
dissolving this injunction, that "it is sufficient for the
decision of the question immediately before the court,
that it does not appear that any serious damage or
irreparable injury will take place, if the defendants con-
tinue to run their boat and land their passengers, as
they have heretofore done, until the complainants'
rights are admitted by the answer, or settled on the
hearing. On the other hand, I can readily see that re-
taining the preliminary injunction may produce great
injury to the defendants, and for which they would be
entirely without remedy, if it should finally appear
that they were only in the exercise of their legal
rights." The view is expressed in this case that while
an injunction may issue to restrain a trespass, there
must be something peculiar in the case to sustain the
jurisdiction and bring it under the head of quieting
possession, or to make a case of irreparable mischief,

or the value of the inheritance must be put in jeopardy by a continuance of the trespass. It has been declared by our own court that "the object and purpose of an injunction is to preserve and keep things in the same state or condition, and to restrain an act, which if done, would be contrary to equity and good conscience; and it is the the appropriate relief when the remedy at law is subsequent to the injury, and the effects cannot be adequately compensated." P. & G. and A. & G. C. R. R. Cos. vs. Spratt and Callahan, 12 Fla., 26. While it is said in this case that insolvency alone of the person against whom the injunction is asked is not sufficient to give the court jurisdiction to grant the writ, yet this fact may be taken in connection with other equitable grounds to aid the jurisdiction. Yonge & Bryan vs. McCormack, 6 Fla., 368. In Burns vs. Sanderson, 13 Fla., 381, it was held that averments in a bill, that defendant had interfered and intermeddled with the real estate described in the bill, and continues to do so, and has and still continues to forbid the tenants and lessees to pay the rent to the plaintiff, and has forcibly entered one of the buildings on the premises, does not lay a foundation for an injunction. It is said, "the bill does not allege that irreparable damage or mischief will ensue, nor does it state the facts complained of, so that the court may form its own conclusion in reference thereto." For all the alleged trespasses and grievances in this case there was an adequate remedy at law, and nothing was alleged to show that irreparable injury would result, and the remedy at law inadequate to fully compensate for it.

It is to be observed in considering the sufficiency of a bill to justify an injunction in cases of trespass, it will not do to simply allege that complainant has no adequate remedy at law, and that his damage will be irreparable. The courts will not act upon complainant's opinion, or even his fears, in such matters, but he must state facts in his bill to enable the court to determine whether or not his alleged injury will be irreparable.

Tested by the rules applicable to such cases, we think the equities of the bill in the case before us in reference to the Titusville dock are sufficient to justify the issuance, on proper application, of the writ of injunction. The bill alleges that the complainant company is engaged in operating boats on the Indian river, in the business of carrying freight and passengers, and is under a contract to carry the mails; that it has leased from the Jacksonville, Tampa & Key West Railway Company the portion of the dock and pier at Titusville particularly described in the bill, and has the exclusive right to use the same for the landing of its boats. Not only has it this right, but that it has been since March, A. D. 1889, in the exclusive use of said dock and pier, and its offices and headquarters are there; that said dock and pier are inadequate to accommodate fully complainant's business, and that it has never held itself out as a wharfinger. The bill also alleges that the character of its traffic business,

carrying perishable products, and its mail contract, re-
quire complainant to act with great promptness in
making connections, and a failure to do so would sub-
ject it to forfeiture and heavy penalties; that its win-
ter business is much heavier than in the summer, and
that the winter business had set in; was rapidly increas-
ing, and that all the room on said dock was impera-
tively demanded to enable complainant to carry on its
business, and meet its obligations under its mail con-
tract; that the use of said dock by respondents for any
considerable time would cause delays in loading and
unloading and possible loss of connections, and there-
by cause irreparable damage; and further, that com-
plainant was under contract to transfer and deliver im-
mediately large shipments of freight and materials
which peculiarly tax all its facilities to the utmost,
and that any inference with said dock would at the
time be especially injurious. It is then alleged that
respondents have procured one or more boats, propose,
and are engaged in, carrying freight and passengers on
said river, and that they persist in landing their steam-
boats at complainant's said dock through force of
threats made by them that if they are deterred from
landing, or hindered in anyway in transacting their
business at said dock, they would cause to be arrested
the agents and employes of complainant, and that for
each package of freight or other matter refused to be
received upon said dock they would sue complainant

JUNE TERM, 1891. 419

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

for damages, and that respondents threaten to continue daily to land at said dock and to use the same freely for all purposes connected with their business without the payment of wharfage or other charges. That notwithstanding the lease of said dock to complainant, and its exclusive occupation of the same, all of which respondents have been fully informed, they claim that said dock is public property, and they have the right in common with all persons to all the rights and privileges of complainant in and about the same, and that if respondents are permitted to succeed in freely using and occupying said leased premises, the entire public will also insist in doing so, and the same will become worthless as a franchise and place of business for complainant.

It is further alleged that complainant apprehends that respondents cannot be deterred from using said property except by the daily use of superior force, and that if such force be used, or packages of freight consigned to them be refused, complainant would be subjected to a multitude of vexatious suits, and the use of said dock by respondents would necessitate the removal of complainant's boats at times herefrom, and would prevent it from properly conducting its business, storing its freight, mooring its boats, and would thereby cause it irreparable injury. Not only would said interference with said dock by respondents cause litigation, expense, delays such as seriously to affect

its business, prejudice its rights and cause irreparable damage, but that respondents are believed to be insolvent, and the judgments that might be recovered against them would be uncollectable. These averments are sufficient to justify the writ. See authorities above cited, and also Dudley vs. Hurst, 67 Md., 44, 1 Am. State Rep., 368, and note; Burnley vs. Cook, 13 Texas, 586; 65 Am. Dec., '79; Rogers Locomotive and Machine Works vs. Erie Railway Co., 20 N. J. (Eq.), 379.

The motion to dissolve being based upon the answer of respondents, the justification of the decree of the court in dissolving the injunction must be found in the allegations of said answer, as respondents filed no additional evidence. In the beginning of an examination of the answer we must keep in mind that on motion to dissolve, respondents will not be permitted to rely upon new matter in avoidance, in their answer not in response to the allegations upon which the equities of the bill are founded. It is stated in High on Injunctions, vol. 2, sec. 1481 (3rd ed.), that "no principle of the law of injunction is better established than that where the equity of the bill is admitted by the answer or is not denied, and the answer sets up new matter in avoidance, or contains matter which amounts to a defense, such answer is not equivalent to a denial of complainant's equities, and the injunction will not be dissolved, but will be continued until a hearing of the cause." The numerous authorities cited in the

JUNE TERM, 1891. 421

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

notes sustain this proposition. In Yonge and Bryan vs. McCormick, 6 Fla., 368, it was decided that the court, on motion to dissolve an injunction will look to such facts of the answer only as are responsive to the bill and where a new equity is set up in the answer to avoid that disclosed in the bill, it will not be con- sidered. *Vide* also McKinne vs. Dickenson, 24 Fla., 366. In their answer respondents admit that they have purchased a steamboat for the carriage of freight and passengers and are landing the same at the said Titusville dock, and that they cannot be deterred from doing so except by the daily use of superior force. They say that they are landing at said dock for the purpose of receiving and delivering freight to and from the Jacksonville, Tampa & Key West Railway Company, under authority of a decree of the Railroad Commission of the State of Florida, securing respond- ents in that right. Respondents then allege in their answer that in July, 1890, they complained to the Railroad Commission of the State of Florida that the Jacksonville, Tampa & Key West Railway Company, a railroad corporation operating a railroad in Florida, discriminated against respondents by attempting to lease the exclusive use of said dock and pier at Titus- ville, which was the river terminal of said railroad company, and that upon their complaint, and after due hearing, said commissioners decided on the 14th day of August, A. D. 1890, that the charter terminus of said railroad company was the channel of Indian river, to which point said road had been constructed,

422 · SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

and that said dock and pier at Titusville are a part and parcel of the main line of said railroad, and a necessary and indispensable facility which the law enjoins it to provide for the transportation of its business; further, that said railway company by said lease to said steamboat company had attempted to vest in it an exclusive use of said dock, and it was thereupon adjudged that said railroad company was guilty of an unjust discrimination, under sec. 4, Chapter 3862, laws of Florida, and that it at once desist, and extend to the East Coast Transportation Company the same uses, services, facilities and privileges at the end of said dock as are extended to the complainant company. The decision of the Railroad Commission, a certified copy of which is filed as a part of the answer, is set up therein as a complete bar to the relief prayed in the bill. This decision was based upon proceedings instituted by the East Coast Transportation Company against the Jacksonville, Tampa & Key West Railway Company, and the complainant steamboat company was not a party to it. While it is determined in said decision, that during the years 1886, 1887 and 1888, the Jacksonville, Tampa & Key West Railway Company transacted all its business at the end of the said dock, and all its river freight was delivered at its freight shed at the end of said dock, and that the said dock was a part and parcel of the main line of the railroad company to which the Jacksonville, Tampa & Key West Railway Company succeeded by lease, and a necessary and indispensable facility for the transaction of its busi-

JUNE TERM, 1891. 423

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

ness which the law enjoins it to provide, at the same time, it was decided by the said comission that it had no jurisdiction of the Indian River Steamboat Company, and no order was made so far as this company was concerned.

It also appears by the said decision that the Commission was proceeding under the last clause of section 4, Chapter 3862, laws of Florida, which provides that no common carrier subject to the provisions of this act shall " make any unjust discrimination in the receiving of freight from or in the delivery of freight to any competing lines of steamboats in this State," and that they had not prescribed any rules and regulations defining or specifying what would be considered as acts of unjust discrimination under this clause, but deemed it advisable to let each case of alleged unjust discrimination rest upon its attending circumstances.

In the decision set up in the answer, the Commission, on the complaint made, heard the facts and decided against the Jacksonville, Tampa & Key West Railway Company, as above stated. Appellees say that the decision has the force and effect of law so far as their right to land at the said dock goes, and that the failure of the complainant company to allege and show this decision before the injunction was obtained was an imposition upon the court, and a just ground for dissolving the temporary injunction. On the other hand, the ap-

424 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

pellant company says that its lease was obtained from the said railroad company before the said decision was rendered; that it was not a party to the proceedings upon which said decision was based, and that the said Railroad Commission had no jurisdiction to adjudicate its rights in any manner whatever.

It will be observed that in this portion of the answer the decision of the Commission is set up as a complete bar to the relief sought. The facts which the Commission found and adjudicated to exist, are not averred, but simply the decision of the Commission is alleged as a sufficient defense to the equities of the bill. Under the rule above announced we do not think the consideration of this portion of the answer comes properly before us. We are considering the correctness of the decision of the court in dissolving the temporary injunction, and the portion of the answer now under consideration is not in response to any allegation in the bill, and sets up new matter in defense of the case made in the bill. It is not such a negation of the equities of the bill as to be a responsive denial of the circumstances upon which they are based, and hence we are not called upon to pass upon this portion of the answer. Counsel for ap- pellees do not contend that the portion of the answer alleging the dock to be part of a public street, called "Broad street," in the town of Titusville, is in response to the equities of the bill, and entitled to consideration on the motion to dissolve. In view of the

conclusion which we have reached on the other allegations of the bill, it becomes unnecessary for us to consider this portion of the answer. What are the other allegations, then, of the answer responsive to the equities of the bill? It is evident that complainant's equity for the injunction depends upon the validity of its title or right to the dock in question. Confining ourselves to the allegations in reference to the Titusville dock, the one in question, we see that the complainant company claims an exclusive right to use, occupy and land its boats at said dock. Its right to the exclusive use of this dock is derived, it is claimed, by lease from the Jacksonville, Tampa & Key West Railway Company. A copy of the lease is filed with the bill. The lease covers about three hundred and ninety feet of the east end of the dock, and by the terms of the lease the railway company "covenants and agrees to maintain the railroad track on said pier and bulkhead, and trestle supporting said track, and to furnish proper and adequate facilities for transfer of local freights to and from said bulkhead." It is further alleged that said leased dock and buildings thereon have been constantly occupied and used by the complainant company for its offices, headquarters and place of transacting most of its general business since the first day of March, A. D. 1889. Respondents deny that they are seeking to make their headquarters at said dock, but say they are landing there for the pur-

426 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

pose of receiving and delivering freight to and from the Jacksonville, Tampa & Key West Railway Company. There is nothing in the affidavits to show that respondents are making any attempt to occupy any houses, or to establish headquarters on said dock. It appears in one of the affidavits that at least two of the complainant company's boats were moved on one occasion to make room for respondent's boat to land at said dock. The landing at the dock by respondent's boat is admitted, but it is alleged to be for the purpose of receiving and delivering freight to and from the railroad company. Respondents admit the alleged lease from the Jacksonville, Tampa & Key West Railway Company, but they deny that said lease is now in full force and effect, or ever was valid or effectual in law. They aver that said dock so leased constitutes the charter terminal of said railroad company, and they deny that the sole object of said complainant company in entering into said lease with said railroad company was to control premises adequate to the transaction of its business, but they aver that its object therein was also to control the said terminal facilities of the said railroad company on the Indian river at Titusville, and thus to prevent the use of said railroad terminal facilities by any competing line of steamboats that might be put on said river in order to preserve a monopoly of the transportation business on said river, and that the use of said railroad terminal facilities has been denied to respondents and the public since said lease.

JUNE TERM, 1891. 427

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

Respondents also allege that said lease by the Jacksonville; Tampa & Key West Railway Company to said complainant company is not merely voidable, but the same is utterly void and worthless upon its face as repugnant to the common and statute laws of Florida, and a violation of the charter duties of said railroad company in attempting to exclude the general public from the use of a portion of its road which is a public highway of the State, and a further violation of law in that it attempts to give to said complainant company the exclusive use of said railroad terminal to the exclusion of all other competing lines of steamboats, including that of respondent. And they deny the allegation that they are not pecuniarily responsible for any and all damages that they may occasion said complainant company.

The mere conclusions of law stated by respondents in their answer in reference to complainant's ownership or right to said dock can have no weight in determining the questions before us. But independent of such statements and of the allegations in reference to the Raiload Commission decision, and the location of the dock in the public street, the answer denies complainant's title or right to the exclusive use of the dock, and such denial is based upon the fact that said dock constitutes a portion of the track and terminal facility of the Jacksonville, Tampa & Key West Railway Company and the exercise of the right claimed by the complainant company would have the effect to exclude other competing lines of steamboats

from landing at said railroad terminal facility. The bill discloses the fact that complainant's right to the dock was derived from the Jacksonville, Tampa & Key West Railway Company, which is a common carrier of freight and passengers, and the lease shows that said railroad company covenanted with the complainant company to keep the railroad track on said dock in repair, and to furnish adequate facilities for landing local freights from said dock. The answer in effect says that complainant has no right, notwithstanding its lease, to exclude other competing lines of steamboats from landing at said dock, because it is a part of a railroad track, and the terminal facility of a common carrier. William B. Watson, general superintendent of the complainant company, in his affidavit states that he is personally familiar with the objects that prompted the lease of said dock from the Jacksonville, Tampa & Key West Railway Company; that the main object is truthfully stated in the bill of complaint; and it was not the object of said steamboat company in leasing said dock to control the terminal facilities of saia railroad company, or to prevent the use of said dock by any competing line that might be put on the river, in order to preserve a monopoly; that at the time of said lease there was no opposition line upon said river, nor was there any rumor or prospect that any such competing line would exist; that said dock was not then adequate to the needs of said complainant company, and said railway company did not deem it a good investment for it to expend money in enlarging

said dock and keeping the same in good repair for the revenue that could be derived from it; that the terms of said lease were agreed upon between the railway company and complainant company as a fair and reasonable disposition of said property, and that the complainant company has expended more than three thousand dollars in adding to said dock since it went into possession of the same. It is also stated in the affidavit that all the dock room was needed for the complainant company in carrying on its business, and that it had never done a wharfinger business. The other portion of the affidavit has no reference to the lease. The other affidavit has no bearing on the subject of the lease.

The general rule on the subject of dissolutions of injunctions on bill and answer, prior to Chapter 1098, laws of Florida, was that when the answer fully denied all the circumstances upon which the equity of the bill was based, the injunction would be dissolved, but this was not an inflexible rule, and the granting and dissolving of injunctions was lodged in the sound discretion of the court, to be governed by the the nature and circumstances of each case. Allen vs. Hawley, 6 Fla., 143; Carter vs. Bennett, *Ibid*, 214; Yonge & Bryan vs. McCormick, *Ibid*, 368; Hayden vs. Trasher, 20 Fla., 715. Under Chapter 1098, laws of Florida, when " the defendant in his answer shall have denied the statements of the bill, or of the accompany-

430          SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

ing affidavit, either party thereto shall have the right
to introduce evidence in support or denial of the bill
and accompanying affidavit or answer, before the in-
junction or other summary order shall be dissolved,
and the chancellor shall dissolve or continue the order,
or may require security according to the weight of
the evidence." The old rule is modified by this statute
to the extent of allowing either party to introduce evi-
dence in corroberation or denial of the bill or answer,
and affidavits before the hearing on the motion to dis-
solve, and that the chancellor shall then determine the
matter according to the weight of the evidence. Sulli-
van vs. Moreno, 19 Fla., 200; Fuller vs. Cason, 26 Fla.,
476, 7 South. Rep., 870. While the chancellor will
ordinarily dissolve an injunction upon an answer de-
nying all the equities of the bill, or where the bill and
accompanying evidence are fully met by the answer
and its accompanying evidence, it does not follow as a
matter of course to do so in all cases. Where fraud is
charged, an illustration is found in the case of Hayden
vs. Thrasher, *supra,* that mere denials of fraud or of
fraudulent intent without a full explanation of the
facts charged in the bill, will not be sufficient to justify
a dissolution of the injunction rightly granted in the
first instance. And so in case an injunction is granted
to prevent irreparable injury, the dissolution or con-
tinuance thereof rests in the sound discretion of the

court, to be governed by the nature of the case. Fuller vs Cason, *supra*.

Are the averments of the answer, given above, sufficient to constitute a responsive denial of the equities of the bill upon which rests complainant's right to relief? In the case of Sullivan vs. Moreno, *supra*, the complainant alleged that he and his grantor had for more than thirty years owned and possessed certain described parcels of land lying on the bay of Pensacola, and during all of said time had been in the quiet possession and enjoyment of all the rights of a riparian owner, until the defendant wrongfully entered into possession of certain portions of the front of said property out in the waters of said bay, and commenced the erection of certain docks, which, if permitted, would exclude plaintiff from his rights, and do him irreparable injury. It is also averred that said docks will present navigation and perpetuate a nuisance. Defendant in his answer admitted that complainant had been in possession and claimed to own the land mentioned in the bill, in respect to which riparian rights were asserted, but he denied that said lots ever did extend to the ordinary high tide mark of Pensacola bay, and affirmed that said lots were always bounded on the part towards the bay by a public way, street or common, and exhibited a certified copy of a deed showing that the lots claimed by complainant were bound by said public street, way or common. It was held that on this bill and answer, in the absence of other evidence, no injunction should have been

granted, as the equities of the bill were completely negatived by the answer. So it was said in the cases of Allen vs. Hawley, and Carter vs. Bennett, *supra*, that a denial of the answer of the circumstances upon which the equities of the bill are founded, will be sufficient ordinarily to dissolve the injunction. In this connection it may be proper to state that in the affidavits of the general superintendent and agent of the complainant company, interposed after the answer was filed, it is not denied that the said dock is a part of the track and constitutes the terminal facility of the common carrier, the Jacksonville, Tampa & Key West Railway Company. It is true that one affidavit states that the motive in obtaining the lease was not to secure a monopoly, and exclude competing lines of steamboats from landing at the terminal facility of said railroad company, but the facts set up in the answer in reference to the character of the dock are not denied in the affidavit, and the failure to do so is a circumstance weighing against the complainant company on this point. If what respondents have averred in connection with their denial of complainant's title or exclusive right to the dock, be sufficient to destroy the equities of complainant's bill, we think it is so responsive as may be considered on the motion to dissolve.

The remaining question then is, has sufficient been shown to defeat complainant's equity to have the injunction continued? It is not to be denied that said railroad company, or said complainant steamboat

company, has the right to erect and maintain docks, wharves and piers as incidental to their business, and hold them or dispose of them as deemed proper. The bill alleges, and it is admitted, that the complainant steamboat company is a corporation, and that the nature and extent of its business render the erection and maintenance of docks and piers at Titusville and elsewhere on the Indian river necessary, and the right to do so is one of its charter privileges, and under the laws of this State, the Jacksonville, Tampa & Key West Railway Company is authorized to build and maintain docks and wharves as incidental to its business. If either company should erect a dock or wharf for its private use, we know of no law to prohibit it. At least as the matter is now presented, without any allegation or proof that the exercise of such a right would transcend the powers of such corporations, or that it is the only facility of the kind in the particular place, we cannot hold that they have no such rights. Undoubtedly if either company should erect a dock or wharf, and open it to the public for a general wharfage business, the public would have a right to use the same under such reasonable regulations, and upon the payment of such charges as the owner might fix, or as might be regulated by law. Ouachita & Mississippi River Packet Co., vs. Aiken, 16 Fed. Rep., 870; Cannon vs. New Orleans, 20 Wall., 577; Packet Co. vs. Keokuk, 95 U. S., 80; Transportation Co. vs. Parkersburg, 107 U. S., 691. But we are not dealing with the sole question of ownership or rights in reference to a

28

434 SUPREME COURT.

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

dock or wharf. It is true that the bill characterizes the property in question as a dock or pier, and it appears that there are houses thereon occupied by the complainant company as its offices and headquarters, and that said dock has been enlarged by said company by expending over three thousand dollars on it since its said lease. No doubt there are portions of this said dock to which said company is entitled to the exclusive use. But it also appears that upon this dock is the tracked terminus of a common carrier. The landing at said dock by respondents' boat for other purposes than delivering and receiving freight to and from said carrier is denied, and complainant company in the affidavits filed do not deny that the railroad track and terminal facility of the Jacksonville, Tampa & Key West Railway Company are located on said dock. In fact the contract of lease shows that said railroad company covenanted with the complainant company to keep in repair and maintain said track and afford facilities for delivering freight to the latter company. We do not overlook the fact that it is alleged in the bill that there is another dock at Titusville, not owned by complainant company at which respondents can, and sometimes do, land their boat, and that said leased dock does not interfere with the use of said other dock or those that may be constructed on the adjacent property along the extensive water front at Titusville. It is not alleged, nor is it contended here, that the other dock mentioned or those that may be constructed along the water front would

JUNE TERM, 1891.      435

Indian R. Steamb't Co. v. East Coast Trans. Co.—Opinion of Court.

offer respondents ingress and egress to the said railroad track and terminal facility. If it was designed by this allegation to show that respondents have another way of reaching said railroad on said dock for the purpose of delivering and reciving freight to and from said railroad, it is too indefinite to accomplish this object. No such effect is claimed for it here. The real question presented here is, can complainant corporation, engaged in carrying freight and passengers on the Indian river by means of steamboats, rent from a railroad common carrier, its dock on said river on which its track and terminal facilities are located, and exclude others from landing at said terminal point for the purpose of delivering and receiving freight and passengers to and from said common carrier? This question, we think, must be answered in the negative. If it be competent to sustain such a contract, the common carrier can select one connecting line of boats, and exclude all others from doing business with it. Such a doctrine would lead to the legalizing of a monopoly, and the sanction of an unfair and unjust preference between connecting and competing lines of transportation. We do not understand that a common carrier ever had such power as this. In the case of the New England Express Co. vs. Maine Central R. R. Co., 57 Maine, 188, the railroad company contracted with the Eastern Express Company to give them a certain specified space in the car attached to the passenger train, and to transport their agents and property on certain conditions and agreeing specially that said railroad com-

pany would not grant or let any similar space in any car or cars attached to the passenger trains on its road to any other express company or persons during the continuance of said contract. This contract was declared to be void at common law, as being one obviously conferring a monopoly upon the express company. The Chief-Justice, who delivered the opinion of the court, said : "Common carriers are bound to carry indifferently within the usual range of their business for a reasonable compensation, all freight offered and all passengers who may apply. All applying have an equal right to be transported, or have their freight transported in the order of their application. They cannot legally give undue and unjust preferences or make unequal and extravagant charges. Having the means of transportation, they are liable to an action if they refuse to carry freight or passengers without just ground for refusal." In this case it was said in effect that the common carrier could not escape its common law liability, or avoid the performance of its duties to the public by fencing off a part of a car for the Eastern Express Company. Quoting further the language of this opinion, it is said : "The very definition of a common carrier excludes the idea of the right to grant monopolies, or give special and unequal preferences. It implies indifference as to whom they may serve, and an equal readiness to serve all who may apply, and in the order of their application. The corporations derive their chartered rights from the State. They owe an equal duty to each citizen. They are allowed to

impose a toll, but it is not to be so imposed as specially to benefit one and injure another. They cannot, having the means of transporting all, select from those who may apply, some whom they will, and reject others whom they can, but will not carry. They cannot rightfully confer a monopoly upon individuals or corporations." In this case the contract with the express company was entered into before a statute was passed in the State of Maine giving all expressmen reasonable and equal terms, facilities and accommodations, and the use of depots, buildings and grounds, for the transaction of their business upon railroads in the State, but the court held that the railroad company had no right before the passage of the act to make such a contract. A contract similar in its nature was held void in International Express Co. vs. Grand Trunk Railway of Canada, 81 Maine, 92. The same doctrine was announced in the case of Sanford vs. Railroad Co., 21 Penn. St., 378. Judge Lewis says in this case : " If it (the common carrier) possessed this power, it might build up one set of men, and destroy others ; advance one kind of business, and break down another ; and might make even religion and politics the tests in the distribution of its favors. Such a power in a railroad corporation might produce evils of the most alarming character. The rights of the people are not subject to any such corporate control. Like the customers of a grist-mill, they have a right to be served, all other things equal, in the order of their application. A regulation, to be valid, must operate on all alike.

If it deprives any persons of the benefits of the road, or grants exclusive privileges to others, it is against law, and void." In Bennett vs. Dutton, 10 N. H., 481, the facts were, that the defendant proprietor of stage coach running daily between Amherst and Nashua which connected at the latter place with another coach, running between Nashua and Lowell, and thus formed a continuous mail and passenger line from Lowell to Amherst, and onward to Francistown. A third person ran a coach to and from Nashua to Lowell. The defendant agreed with the proprietor of the coach connecting with his line that he would not receive passengers who came from Lowell to Nashua in the coach of such third person, on the same day that they applied for passage to places above Nashua. It was here held that defendant was bound to receive the plaintiff, there being sufficient room, and no evidence that he was an unfit person, or that he had any design to injure defendant. In Marriott vs. London & Southwestern Railway Co., 1 Common Bench (N. S.), 499, it was held that an arrangement made by a railway company with the proprietor of an omnibus running between a station on its railroad and another point, to provide omnibus accommodations for all passengers by any trains on said road, by which the proprietor of said omnibus was allowed the exclusive privilege of driving his vehicle into the station-yard of said railroad for the purpose of taking up and setting down passengers at the door of said railroad office, was a breach of the prohibition against granting unfair preferences. This

decision was made under the statute of 17 and 18 Vict., prohibiting "undue and unreasonable" preference. Such a statute, however, has been regarded in America as declaratory of the common law, and the same result would be reached independent of the statute. Sanford vs. Railroad Co., *supra;* 1 Wood's Railway Law, sec. 195, page 563. See also the following authorities bearing on this branch of the case : Michigan Central Railroad Co. vs. Burrows, 33 Mich., 6 ; Rogers Locomotive and Machine Works vs. Erie Railway Co., 20 N. J. (Eq.), 379 ; Messenger vs. Pennsylvania Railroad Co., 36 N. J. (Law), 407 ; Messenger vs. Pennsylvania Railroad Co., 37 N. J. (Law), 531 ; McDuffee vs. Portland & Rochester Railroad, 52 N. H., 430.

The respondents denied that they were insolvent, and there is nothing in the affidavits on this subject. In determining the propriety of dissolving or continuing an injunction, the Chancellor may not only anticipate the character of the injury that may result to the complainant in the event he should finally succeed, but he can also consider the extent and character of the damage which defendant may sustain by means of the injunction. New York Printing and Dyeing Establishment vs. Fitch, *supra.* The proceedings here do not call for a cancellation of the lease from the railroad company to the complainant steamboat company, yet from what has been said, it is evident that the latter company cannot avail itself of said lease to prevent the respondents from reaching the railroad track and terminal facility of the former company. State vs.

Hartford & New Haven Railroad Co., 29 Conn., 538. The temporary injunction was dissolved by the Chancellor on bill, answer and affidavits. His action should not be disturbed, unless we can see that a sound discretion has been abused.

The Chancellor not only dissolved the injunction, but dismissed the bill. In dismissing the bill we think there was error. The bill alleged that respondents were using and occupying said dock and pier at Titusville, and the premises and appurtenances thereto appertaining, and were seeking to make their headquarters thereon, and also the using and occupying numerous other docks at other points on said river. The injunction prayed was to restrain respondents from such use of said docks, and from making them the usual place for landing their boat, and that complaint be decreed the undisturbed and undivided possession of said docks. No injunction was granted as to any of the docks except the one at Titusville, but respondents answered, tendering an issue upon the averments as to the other docks. They deny that they are making their headquarters on the Titusville dock, or using the same otherwise than as a landing at the railroad terminus for the purpose of receiving and delivering freight from and to the said railroad. It was proper, we think, to dissolve the injunction restraining respondents from landing their boat at the Titusville dock, under the circumstances; still the bill states a case which would, if proven, entitle the complainant to the relief asked upon the final hearing, and it was not proper to dis-

miss its bill without an opportunity to sustain it in the usual way of making proof in such cases. It cannot be said that no other relief was sought in the bill, except to restrain respondents from landing their boat at the Titusville dock. Under the allegations here, and the circumstances of this case, the bill should not have been dismissed. 2 High on Injunctions, sec. 1477; Gray vs. Baldwin, 8 Blackf., 164.

The decree of the Chancellor, in so far as it dissolved the injunction, is affirmed; and in so far as it dismissed the bill, is reversed, the costs of the appeal to be di vided between the parties.